## The People on the relation of Benjamin Whipple v. The Judge of the Saginaw Circuit Court.

*Circuit judge: Counsel: Transfer of causes: Statute construed.* The statute (*Comp. L., 1857,* § *3445*) providing for the transfer of a suit to another circuit whenever the judge in which it is pending " has *heretofore* been consulted or employed as counsel in the subject matter to be litigated in said suit," is not limited to the cases alone of consultation or employment before the passage of the statute; this language refers to the time of the application for transfer, and not to the time of the passage of the act.

*Legislative intent: Rules of construction.* The primary object of all interpretation of statutes is to ascertain the real intent of the legislature; and while this intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract, or their strictly grammatical construction alone, that is to govern, but they are to be applied to the subject matter and general scope and purpose of the whole act, and to be considered with some reference to the evil sought to be remedied, and in the light of other statutes in *pari materia,* as well as the principles of the common law.

*Transfer of causes: Circuit court commissioner: Jurisdiction.* The circuit court commissioner of the county where the suit is pending has authority to make the order of transfer under said statute; although his powers are restricted to those which a circuit judge may exercise at chambers, the fact that the circuit judge of his county is disqualified to act in the matter does not necessarily deprive him of the jurisdiction; the power of that particular judge to act is not the final criterion, especially where the statute gives the power to the circuit judge of an adjoining county.

*Submitted on briefs October 30.    Decided January 8.*

Application for writ of prohibition.

*Green & Scofield,* for relator.

*Marston & Hatch,* for respondent.

CHRISTIANCY, CH. J.

This was an application for a writ of prohibition *to* restrain the judge of the circuit court for the county of Saginaw, from trying, or entertaining jurisdiction of, an action of replevin instituted by the relator against Arthur Hill and Miron Bunnell, in the circuit court for Bay county, in May, 1871, and removed to the circuit court for Saginaw county, by an order made by the circuit court

commissioner of Bay county, January 11, 1872. The ground upon which the order of removal was made, was that the judge of the circuit court for Bay county, had been employed (before going onto the bench) as counsel in the same matter involved in this suit, and had been consulted by said Whipple in relation to bringing said action.

This fact is not disputed by the relator; but it is insisted by his counsel that the circuit court commissioner had no power to grant the order of removal; because, *first*, the fact that the circuit judge for Bay county had been consulted and employed as counsel in the subject matter to be litigated, constituted no ground for the removal of the cause, by whomsoever the order might be made; and, *second*, because if the fact stated constituted a ground for removal, the order could not be made by the circuit court commissioner, but should have been made by the judge of an adjoining circuit.

The relator places his main reliance upon the first ground.

The statute under which the power for making the order of transfer is claimed by the respondent and denied by the relator, is the act of February 12, 1855, as amended in 1858.—*Sess. L. 1855, p. 273; Comp. L. 1857, §§ 3445–3452.*

The first section of this act is in these words: "That whenever any civil suit or proceeding shall be pending in any circuit court in this state, either on the law or equity side of said court, in which the judge of said circuit court shall be interested as a party, or as a member of any corporation which is a party to said suit, *or has heretofore been consulted or employed as counsel in the subject matter to be litigated in said suit*, or in which he would be excluded from sitting as a juror by reason of consanguinity or affinity to any party to said suit; the same may be transferred to some other circuit court in the manner provided by this act."

The second section (as amended in 1858) provides that the application for such transfer may be made to the "circuit court commissioner of the county where said suit· is pending, or to the judge of any adjoining circuit, who is not within the disqualifications mentioned in the first section."—*Sess. L. 1858, p. 14, § 30.*   It also provides that the parties to any such suit may, by stipulation in writing, consent to the transfer of such suit or proceeding, without any application to the judge or commissioner; such stipulation to have the same effect as an order for the same purpose.   The subsequent sections provide for notice of hearing the application or petition, the hearing of the same, and the filing of the order, and the transfer of the files, records and papers, etc.

. But it is insisted by the relator that, unless the judge of the court where the action is pending, had been consulted or employed as counsel, etc., *before the passage of the act* in question, the fact that he has been thus consulted or employed, is not made a cause for the transfer of the suit; and the statute does not apply to the case.   This argument is based upon the letter of the clause of section one (which I have placed in italics), "or has heretofore been consulted or employed," etc.   This language, *it is* said, necessarily refers to the time of the passage of this act, and, to bring the case within it, the consultation or employment must have taken place prior to the passage of the act; and if we look only to ordinary definition and grammatical construction of the words, this position must be admitted to be well taken.

But the primary object of all interpretation or construction of statutes, is, to ascertain the real intention of the legislature; and no specific or artificial rules of interpretation can be of any value, which do not contribute to this end.   Legislatures are not grammar schools; and, in this

country at least, it is hardly reasonable to expect legislative acts to be drawn with strict grammatical or logical accuracy.    It is quite true, that in ascertaining the meaning of a statute provision, we are not at liberty to go entirely outside of the statute and guess at a meaning for which the statute furnishes no support.

We must infer the intention from the language used. By this, however, I do not mean that we are to consider the meaning of the particular words only in the abstract, but as applied to the subject matter and general scope and purpose of the whole act.    And in making this application, in order to ascertain the real intent, we may often be required to consider the provision in connection with other statutes and the common law.    In construing the language of the present statute, it is proper first to inquire what was the nature of the evil or inconvenience sought to be remedied by it, and how this purpose has been carried out, in other particulars as well as in this.

The evil which led to the passage of this act, and the primary object of the legislature in passing it, cannot be mistaken.    It was to make provision for the removal or transfer of causes from one circuit court to another, in those cases where the judge of the court in which they were pending, was incompetent to try them, and where, without such removal, a trial could not be had.    By the fundamental principles of the common law, no man could be judge in his own case; and no statute was needed to declare this principle.    And for the reason, and upon the same principle, he could not properly be allowed to try a cause in which he was a member of a corporation which was a party, or a cause in which he had been consulted or employed as counsel.    No statute would be needed to establish any of these disqualifications.    Since 1846, however, we have had a statute expressly declaring all these

disqualifications, except that of having been counsel (and this falls, we think, within the spirit of the general common-law prohibition as to parties), and providing expressly the same disqualification on the ground of consanguinity or affinity as that established by the statute we are discussing. —See *Rev. Stat. 1846, ch. 96, § 18; Comp. L. 1857, § 4064.*

This statute of 1855, therefore, was not required to establish any of these disqualifications in the judge, to try any of the cases in which such disqualifications existed, or might thereafter exist, but merely to provide for the transfer of such causes to some other court where they might be tried.

Now, it is clear, and is not denied, that the statute (*Sec. 1 of the Act of 1855, Comp. L., § 3445*), gives this power of removal or transfer of causes, in case of all the other of the disqualifications, if existing at *the time when the application* for the transfer shall be made, and does not require that they should have existed at the time of the passage of the act. No reason has been suggested, and none is pretended to exist, why the disqualification arising from being employed as counsel, should not, also, on the same principle, be allowed to operate, if existing at the time of the application ; none for supposing the evil or inconvenience arising from this cause could be any the less, because it occurred after instead of before the passage of the act.

To maintain the construction contended for by the relator, we must infer that the legislature either intended to allow the judge, if consulted and employed after the passage of the act, to proceed and try the cause, though disqualified to try it if employed before the act; or that they intended to leave the parties without any such power of transfer in the one case, but to give it to them in the other, though the principle and the inconvenience sought to be remedied, were precisely the same in both.     Such an

inference borders so closely upon absurdity, that a proper respect for the legislature forbids us to indulge it, unless the language of the particular provision, when examined in connection with all the other provisions of the act and the fundamental principles of the common law, be such as to prevent any other interpretation of their intention.

We think it does admit, and, when considered with reference to the other provisions of the act, and the evil to be remedied, requires, a different interpretation,—that the words, "has heretofore been consulted," etc., must be construed as having reference to the time when the case shall be pending, and when the application shall be made, rather than to the time when the statute was passed.

Other portions of the act show clearly enough, that the person who drew it paid less regard to the strict rules of grammar, or to keeping up an accurate distinction of tenses, than to the declaration of the principles intended to be adopted. Thus, in the second section, it is provided, that the party "may apply to a circuit court commissioner of the county where the suit *is* pending, or to the judge of any adjoining circuit who *is* not within the disqualifications mentioned," etc.    Such a use of language is quite common in statutes; and no one would contend that, though the present tense is used, the cases "pending" must be confined to those pending on the date of the actor, that the qualification or disqualification referred to, was so to be restricted. And, though not so expressed, all readily understand that this language has reference to the state of things at the time the application is made.    Looking, therefore, at the entire act, and the evils to be remedied by it, we can have no reasonable doubt that the actual intention of the legislature was to give the right of transfer on the ground of any of the disqualifications mentioned, if existing at the time of the application.    And whenever the intent is thus

rendered clear, any narrow rule of interpretation, based upon the abstract meaning of a particular clause or word, which would lead to a different result, must be wrong; since it would defeat the legislative intent.

This is not a *casus omissus,* in which the legislature have failed to make *any provision,* and therefore left nothing for construction, but the subject of providing a remedy for cases in which a judge might be disqualified by reason of having been consulted or employed by one of the parties, was presented to their minds, and they have undertaken to provide a remedy; and the language used for this purpose, is a proper subject of interpretation and construction.

As to the second point, it is contended that, as the constitution and the statute fixing the jurisdiction of circuit court commissioners, vest them only " with judicial powers not exceeding those of a judge of the circuit court at chambers," and the commissioner was but a county officer, and the circuit judge for the county could not have made the order because disqualified, and the judge of an adjoining circuit could not have made it in Bay county, therefore the commissioner could not make it; we think it would be too narrow a construction of the constitution (and the statute), conferring powers upon circuit court commissioners, to hold that the commissioner who may exercise the power of a circuit judge at chambers, would be deprived of the power to make an order, because the circuit judge for his county, in consequence of such disqualification, could not make the order; especially as this statute gives the power to the circuit judge of an adjoining circuit. We see no reason to doubt the right of the commissioner to make the order.

The writ of prohibition must be denied, with costs.

The other Justices concurred.