## WAYNE COUNTY *v.* AUDITOR GENERAL.

1. STATUTES—CONSTRUCTION—IN PARI MATERIA.

   Statutes *in pari materia* are to be construed together, and repeals by implication are not favored.

2. SAME—RULE IN PARI MATERIA.

   The object of the rule *in pari materia* is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject.

3. SAME—STATUTES REFERRING TO SAME SUBJECT SHOULD BE CONSTRUED TOGETHER.

   Since Act No. 150, Pub. Acts 1927, providing for distribution of highway funds among several counties of State, specifically refers to Act No. 302, Pub. Acts 1915, amended by Act No. 1, Pub. Acts 1925, referring to same subject, both acts must be read together, and, if possible, so construed as to give effect to provisions of each act.

4. SAME—CONSTITUTIONAL LAW—HIGHWAY FUNDS—COUNTIES—GASOLINE TAX.

   In distributing highway funds among the several counties of the State, the auditor general properly construed Act No. 302, Pub. Acts 1915, as amended by Act No. 1, Pub. Acts 1925, providing for distribution of weight tax, in connection with Act No. 150, Pub. Acts 1927, § 19 (c), providing for distribution of gasoline tax, by adding $6,000,000 of weight tax to a sum equal to the difference between $6,000,000 and 50 per cent. of total weight tax, such difference being taken from gas tax, and distributing total as follows: seven-eighths to the several counties in proportion to amount of weight tax received from respective counties, and remaining one-eighth equally among the counties; such construction not being in violation of Wayne county's rights under provisions of State and Federal Constitutions providing for due process and equal protection of the law.

5. SAME—REJECTION OF AMENDMENT—INFERENCES.

Rejection by legislature of proposed amendment to Act No. 150, Pub. Acts 1927, providing for distribution among counties of highway funds from gasoline tax, which would have rendered said act subject to interpretation as now contended for by Wayne county, gives rise to inference that legislature did not intend that the act should be so interpreted.

6. SAME—PRACTICAL CONSTRUCTION BY PUBLIC OFFICERS SHOULD BE CONSIDERED BY COURTS.

The practical construction given by public officers for upward of two years to doubtful or obscure provisions of Act No. 1, Pub. Acts 1925, amending Act No. 302, Pub. Acts 1915, and Act No. 150, Pub. Acts 1927, § 19 (c), providing for distribution among counties of highway funds arising from weight tax and gasoline tax, without such construction being questioned, will be considered and given weight by courts in construing said acts.

7. SAME—RE-ENACTMENT WITHOUT CHANGING METHOD ADOPTED BY PUBLIC OFFICER RAISES INFERENCE OF INTENTION TO CONTINUE SAID METHOD.

Re-enactment in Act No. 270, Pub. Acts 1929, of section 34, Act No. 1, Pub. Acts 1925, under which highway funds were being distributed among counties by auditor general, without changing method of distribution adopted, gives rise to fair inference that legislature intended such distribution should continue in same manner as theretofore.

Mandamus by Wayne County, a municipal corporation, by its board of auditors, to compel Oramel B. Fuller, auditor general of the State of Michigan, to draw and deliver to it a warrant on the State treasurer for certain highway funds. Submitted March 7, 1930. (Calendar No. 34,925.) Writ denied March 26, 1930.

*James E. Chenot,* Prosecuting Attorney, and *Valois E. Crossley,* Assistant Prosecuting Attorney, for the plaintiff.

*Wilber M. Brucker,* Attorney General, and *Charles Rubiner,* Assistant Attorney General, for defendant.

NORTH, J.   Wayne county by its board of auditors has brought mandamus to compel the State auditor general to draw and deliver to that county a warrant on the State treasurer for $679,062.81, claiming it has been deprived of that amount by reason of an alleged unlawful distribution of highway funds among the several counties of the State.   The defendant asserts that the funds have been distributed in accordance with statutory provisions, and that nothing has been unlawfully withheld from plaintiff. Determination necessitates a construction of Act No. 302, Pub. Acts 1915 (1 Comp. Laws 1915, § 4797 *et seq.*), as amended by Act No. 1, Pub. Acts 1925, and also of Act No. 150, Pub. Acts 1927.

It may be well to bear in mind that these have been companion statutes since the inception of the present method of raising highway funds.   Prior to 1925, State highway funds were provided by a specific tax levied upon motor vehicles, and the tax was computed on the basis of weight and horse power.   In 1925, with the obvious purpose of increasing the amount of highway funds, the legislature adopted a new method of taxation.   In furtherance of its plan, Act No. 1 and Act No. 2, Pub. Acts 1925, were passed as immediate effect acts in January of that year.   By Act No. 1 the specific tax on motor vehicles was changed to one computed on the basis of weight alone, and this has come to be known as "the weight tax."   Section 34 provides that $6,000,000 of the amount thus collected annually shall be returned to the counties proportionately in the manner indicated by said section, which is here-

inafter quoted. Act No. 2 of 1925, for the first time in Michigan legislation, provided for the levy of a so-called "gas tax." This act contained no provision for returning to the counties for highway construction any portion of the tax collected. It provided, as does the weight tax law, that the revenue received should be made a part of the State highway funds in the hands of the State treasurer; and appropriation thereof was made in the body of the act. While Act No. 150, Pub. Acts 1927, expressly repealed Act No. 2 of 1925, in effect it practically re-enacted the legislation which it purports to repeal, amplified certain phases of it, increased the gas tax from two cents to three cents per gallon, and provided a method by which a further portion of the highway funds was to be turned over to the counties, cities, and villages of the State. Thus we have before us for construction an act which in its origin was a companion of Act No. 1, Pub. Acts 1925, but amended in such a way as materially increases the amount of the tax raised and placed in the highway funds of the State; and, as amended, it provides the method of distributing a portion of such funds among the counties, cities, and villages of the State.

The particular sections of these two acts which are pertinent to the instant case are as follows:

Section 34, Act No. 1, Pub. Acts 1925:

"Six million dollars of the amount collected annually as taxes upon the registered motor vehicles shall belong to the several counties of the State, and shall be returned to the county treasurers thereof in proportion to the amounts received from the owners of registered motor vehicles within the several counties, to be used for highway purposes under the jurisdiction of the county authorities."

Subdivision (c), § 19, Act No. 150, Pub. Acts 1927:

"A sum equal to the difference between six million dollars and fifty per cent. of the total weight tax collected under the provisions of act number three hundred two of the public acts of nineteen hundred fifteen, as amended (sec. 34, Act No. 1, Pub. Acts 1925), shall belong to the several counties of the State: seven-eighths of a sum equal to one-half of the total weight tax shall be paid to the several county treasurers in proportion to the amount of said weight tax received from the owners of registered vehicles within the several counties under the provisions of said act number three hundred two of the public acts of nineteen hundred fifteen, as amended; the remaining one-eighth of said sum shall be paid to the several county treasurers thereof as follows:   One eighty-third to the county treasurer of each county."

After the gas tax law of 1927 became effective, the auditor general proceeded to apply the law to the highway funds and make distribution thereof to the counties as follows:   By adding $6,000,000 out of the weight tax to a sum equal to the difference between $6,000,000 and 50 per cent. of the total weight tax, this difference being taken from the gas tax money, and apportioning the total thus reached in the following manner: seven-eighths thereof to the several counties, in proportion to the amount of the weight tax received from the owners of registered motor vehicles within the respective counties under the weight tax law; the remaining one-eighth thereof he distributed equally among the 83 counties of the State.   The plaintiff claims this method of distribution is erroneous; its position being that the $6,000,000 specified in the weight tax law (Act No. 1, Pub. Acts 1925) should be first apportioned among the counties in proportion to the amount of weight tax received from the respective counties, and that

the balance of the funds to be distributed (the sum equal to the difference between $6,000,000 and 50 per cent. of the total weight tax) should be divided among the counties as follows: Seven-eighths in proportion to the amount of the weight tax received from the respective counties, and one-eighth equally among the 83 counties. If this latter method is correct, the plaintiff is entitled to receive from the State the sum first above named; but on the other hand, if the method adopted by the auditor general is correct, the plaintiff has already received its full share of the highway funds.

There is no controverted issue of fact. The parties agree that the total amount to be distributed is such a sum as equals one-half the weight tax. The one question of law presented is this: Which of the two methods above outlined is the correct and lawful way of distributing that part of the weight tax and of the gas tax which belongs to the respective counties of this State?

That the terms of the 1927 act are couched in bunglesome language is all too evident. But as has been said by Chief Justice CHRISTIANCY:

"Legislatures are not grammar schools; and, in this country at least, it is hardly reasonable to expect legislative acts to be drawn with strict grammatical or logical accuracy." *People, ex rel. Whipple,* v. *Saginaw Circuit Judge,* 26 Mich. 342.

It is likewise clear that the sections above quoted from the two acts are *in pari materia.*

"Statutes *in pari materia* are to be construed together, and repeals by implication are not favored. The courts will regard all statutes upon the same general subject-matter as part of one system, and later statutes should be construed as supplementary

or complementary to those preceding them.'' *State v. Omaha Elevator Co.,* 75 Neb. 637 (106 N. W. 979, 110 N. W. 874).

''The object of the rule *in pari materia* is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject.'' *Ray Corp.* v. *Secretary of State,* 241 Mich. 457.

It has already been noted herein that these two methods of raising highway funds first became a part of our statutory law at substantially the same time. The enactment of 1927 specifically refers to the earlier one, and must be read in connection with it. If possible, a construction should be placed on these two pieces of legislation which will give effect to each of the provisions contained in the respective acts. This accords with an elementary principle of statutory construction. *Swartwout* v. *Railroad Co.,* 24 Mich. 389. But if we adopt plaintiff's contention, we must wholly disregard that portion of subdivision (c) of section 19, which definitely provides that:

''Seven-eighths of a sum equal to one-half of the total weight tax shall be paid to the several county treasurers in proportion,'' etc.; ''the remaining one-eighth of said sum shall be paid to the several county treasurers'' in equal proportion.

Instead of observing this provision in the statute, plaintiff would first deduct $6,000,000 from the amount which equals one-half of the weight tax; and by so doing it would minimize the amount of the one-eighth which the act expressly provides shall be divided equally among the 83 counties of the State. On the other hand, defendant's interpretation of the statute obviously carries out the intent of the legislature and without doing violence to the words employed in either act. Subdivision (c) of section 19, by expressly referring to Act No. 1, Pub. Acts

1925 (amending Act No. 302, Pub. Acts 1915 [1 Comp. Laws 1915, § 4797 *et seq.*]), clearly indi- cated a legislative intent that these two acts shall operate together practically as one. We think it is this which accounts for the provision in subdivi- sion (c) of the 1927 act that the amount to be dis- tributed shall be measured by the weight tax created by the 1925 act. By the terms of that act, the counties were entitled to $6,000,000 at the time the 1927 act was passed. This $6,000,000, together with the additional amount for distribution provided for in subdivision (c) of section 19 of the 1927 act, clearly entitled the counties to the distribution of an amount in excess of $6,000,000. The defendant's method of distribution results in Wayne county still receiving its proper percentage of $6,000,000, as provided in the 1925 act, and it also receives the same percentage of an amount in addition to the $6,000,000, as well as one eighty-third of the remain- ing one-eighth of the amount to be distributed. In other words, defendant's method of distribution complies with the requirements of both acts and carries out the legislative intent.

"All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes *in pari materia,* are treated prospectively and con- strued together as though they constituted one act. * * * They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest en- actment." 2 Lewis' Sutherland Statutory Construc- tion (2d Ed.), p. 844.

See, also, *Malonny* v. *Mahar,* 1 Mich. 26; *People, ex rel. Hughes,* v. *May,* 3 Mich. 598; *People, ex rel.*

*Whipple,* v. *Saginaw Circuit Judge, supra; In re Kreiner,* 156 Mich. 296.

The 1927 act neither amends nor repeals Act No. 1 of 1925. Instead, it permits $6,000,000 (and more) to be apportioned on the basis of the 1925 statute. But, by taking into consideration the $6,000,000 provided in that act, the legislature has in the 1927 enactment lessened the proportion of the highway funds thereby provided for the counties to be distributed on the basis of the amount of the weight tax paid in each county, and has increased the proportion of such funds to be paid to the several counties equally. That the 1927 act provides for apportionment of a sum in addition to the $6,000,000 on a different basis than that provided in the 1925 act is a matter for legislative determination, of which the plaintiff may not rightfully complain. We think the two acts can be, and should be, construed together in harmony; that the method used by the defendant in distributing the highway funds is in accordance with the statutes quoted; and that neither the provisions of the State Constitution nor of the Federal Constitution are violated by taking plaintiff's property without due process of law or depriving it of the equal protection of the law.

If there is any occasion to support the conclusion here reached as to the proper statutory construction by further reasons, such reasons will be found in the following:

(1) *Legislative History.* The legislative history of the 1927 act reveals the fact that while it was pending in the legislature, a proposed amendment was rejected which, if embodied in the act, would have rendered it subject to plaintiff's interpretation and not to that of the defendant (see House Journal, 1927, page 965). Surely this gives rise to

the inference that the legislature did not intend the act should be subject to the interpretation now urged by plaintiff. 36 Cyc. p. 1147, citing many cases.

(2) *Construction by Administrative Officers.* For upwards of two years quarterly distributions of these funds aggregating many millions have been made in accordance with defendant's contention without prior proceeding being instituted by which the regularity or legality of such distribution was questioned. Practical construction given to doubtful or obscure statutes by public officers, the discharge of whose duties are affected thereby, will be considered and given weight by courts in construing such laws. *Board of Education* v. *Goodrich,* 208 Mich. 646; *Commerce-Guardian Trust & Savings Bank* v. *State,* 228 Mich. 316; *People* v. *Robinson,* 241 Mich. 497; 36 Cyc. p. 1141.

"The courts give great weight to a construction placed upon an act of congress by the executive department which is charged with the duty of carrying it into effect, not a controlling weight, but persuasive" (quoting syllabus). *Burk-Waggoner Oil Ass'n* v. *Hopkins,* 296 Fed. 492, citing many cases; and affirmed in 269 U. S. 110 (46 Sup. Ct. 48).

The proper method of distributing highway funds among the various counties was rendered uncertain by the doubtful and ambiguous terms of the 1927 act; and hence the practical construction given to that act by an executive or administrative department (though not conclusive) should be accorded careful consideration. Chief Justice Cooley's opinion in *Westbrook* v. *Miller,* 56 Mich. 148, quoted in plaintiff's reply brief, is in point:

"When, in the performance of executive duties, it becomes necessary for the executive department

to construe a statute, great deference is always due to its judgment; and the obligation is increased by the lapse of considerable time before its acts are called in question. This has been several times held by the Federal Supreme Court, and by the subordinate courts of the Federal system, and a reference to a few of the cases will suffice to show the current of decisions. (Cases cited.) * * *

"The rule which favors the acceptance of a practical construction of statutes has its limits, and must not be suffered to defeat the manifest purpose of the legislation. *Matter of Manhattan Savings Institution,* 82 N. Y. 142."

(3) *Subsequent Acts of Legislature.* While the fund was being distributed in the manner adopted by the defendant, which fact must be presumed to have been known to the members of the legislature, they re-enacted the part of section 34 of the act of 1925 by which it is provided that $6,000,000 of the amount annually collected shall be returned to the county treasurers. See Act No. 270, Pub. Acts. 1929. This gives rise to the fair inference that the legislature intended such distribution should continue in the same manner as theretofore. *State* v. *Sheldon,* 79 Neb. 455 (113 N. W. 208).

For reasons hereinbefore indicated, the writ is denied. The question presented is one of a public nature and of State-wide importance, therefore no costs will be awarded.

Wiest, C. J., and Butzel, Clark, Sharpe, and Fead, JJ., concurred. McDonald and Potter, JJ., did not sit.