MINOR WALTON BEAN CO. *v.* UNEMPLOYMENT COMPEN-
SATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—STATUS OF EMPLOYEE—STAT-
UTES.
    The status of an employee who filed a claim for unemployment
    compensation benefits is not affected by subsequent legisla-
    tive amendment, Federal statute or Federal departmental or
    bureau holding (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as
    amended by Act No. 324, Pub. Acts 1939).

2. SAME—PREPARATION OF BEANS FOR RESALE—FARM LABOR.
    After elevator company purchased beans from farmers and paid
    for them as they came from the threshing machine and
    mingled various purchases, the labor performed by the com-
    pany's employees in culling, grading, and preparing beans
    for resale is in no sense an incident to ordinary farm or
    agricultural labor as such terms are used in the unemploy-
    ment compensation act (Act No. 1, § 42, Pub. Acts 1936 [Ex.
    Sess.], as amended by Act No. 324, Pub. Acts 1939).

3. CONSTITUTIONAL LAW—STATUTES—SUBSEQUENT CONGRESSIONAL
    ACTION—FEDERAL BUREAU CONSTRUCTION.
    While a State legislature may adopt Federal nomenclature in
    passing a State statute, it cannot subject the act to future
    congressional action or subsequent Federal bureau construc-
    tion for, to do so, would render the act not that of the State
    will and determination but that of a body wholly foreign in
    point of law to State legislative power and sovereignty.

NORTH, C. J., and STARR and BOYLES, JJ., dissenting.

Appeal from Eaton; McDonald (Archie D.), J.
Submitted January 25, 1944. (Docket No. 97, Cal-
endar No. 42,524.) Decided May 17, 1944. Rehear-
ing denied June 30, 1944.

Certiorari by Minor Walton Bean Company, a Michigan corporation, to review order of Michigan Unemployment Compensation Commission granting unemployment compensation benefits to Ina L. D. Willis. Judgment for plaintiff. Defendant appeals. Reversed.

*Stanley H. Raidle* and *William P. Smith,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara, Frank Day Smith,* and *Florence Clement Booth,* Assistants Attorney General, for defendant.

*Kleinstiver & Anderson, Hubbard & McCullough, Donald G. Fox* and *Crane & Crane, amici curiae,* on application for rehearing.

STARR, J. (*dissenting*). Upon review by certiorari the trial court entered judgment which reversed a decision of the appeal board of defendant commission, and determined that claimant Ina L. D. Willis, an employee of plaintiff company, was not entitled to unemployment compensation benefits. Defendant commission appeals from such judgment.

Plaintiff, a Michigan corporation, was engaged in the bean business and operated an elevator in the city of Charlotte. It purchased dry edible beans from farmers, which, when delivered to plaintiff, were usually of "thresh run" quality, that is, in the same condition as they came from the threshing machines. The price paid to farmers was on the basis of choice, hand-picked beans, and the beans were tested to determine what amount should be deducted for dockage to bring them to that basis. Beans purchased were commingled together and were then passed through various processing operations to establish grades.

Claimant Willis was employed by plaintiff during 1940 as a "bean picker." Her work was the removal of culls, off-color beans, and foreign substances from the beans as they passed before her on a conveyer belt. For her work on so-called small-belt machines she was paid 7 cents a pound for the amount of tare or pickage she removed from the beans; for her work on large-belt machines she was paid 25 cents an hour. The tare or pickage was sold to farmers for feed or given away.

Claimant's employment was terminated in March, 1941, and in April of that year she filed claim for benefits under the Michigan unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 8485-41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*] [later amended by Act No. 364, Pub. Acts 1941, Act No. 18, Pub. Acts 1942 (2d Ex. Sess.), and Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485-41 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 17.501 *et seq.*)]). On May 9, 1941, her claim was denied by the commission, and on reconsideration was again denied on June 11, 1941. On appeal a referee of the commission reversed the former ruling and determined that she was entitled to unemployment benefits. Plaintiff appealed from the referee's decision to the appeal board of the commission, which on November 19, 1942, affirmed the referee's decision. Upon review by certiorari the trial court entered opinion reversing the appeal board and denying claimant unemployment benefits, on the ground that her services constituted "agricultural labor," and under section 42 of the act as amended, she was excluded from such benefits. Defendant commission appeals from the judgment for plaintiff entered in pursuance of such opinion.

Act No. 1, § 42, Pub. Acts 1936 (Ex. Sess.), provided in part:

"(1) Subject to the other provisions of this section, 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied. * * *

"(5) The term 'employment' shall not include:
* * *

"(d) Labor performed on a farm by an employee of the owner or tenant of the farm in connection with the cultivation of the soil and harvesting of crops or the raising and feeding of live-stock, bees, and poultry, or in connection with the packing, packaging, transportation or marketing of these materials or articles when carried on as an incident to ordinary farming operations."

Act No. 324, Pub. Acts 1939, effective June 22, 1939, renumbered subsection (5) of the above section 42 so as to stand as subsection (7) and added subdivision (n) thereto, so as to read as follows:

"(7) The term 'employment' shall not include:
* * *

"(n) Any service not included as 'employment' under title 9 of the social security act."

The Federal social security act, chap. 531, title 9, § 907 (49 Stat. at L. 642 [See 42 USCA, § 1107]) provided in part:

"When used in this title— * * *

"(c) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—

"(1) *Agricultural labor.*"

It is clear that section 42 (7) (n), above quoted, incorporated by reference in the term "employment" the exemption of "agricultural labor" as provided in title 9 of the then existing Federal social security act. Therefore, if claimant's services

constituted "agricultural labor," the remuneration which she received in such exempted employment would not constitute wages under section 44 (2) of the State act, upon which a claim for unemployment benefits could be predicated.

The question presented is whether or not claimant's work in 1940 as a bean picker was "agricultural labor" within the meaning of that term as incorporated in the Michigan unemployment compensation act by the 1939 amendment to that act. If it was agricultural labor, she was not entitled to unemployment benefits. If it was not agricultural labor, she was entitled to such benefits.

Section 4 of the 1936 act authorized defendant commission "to promulgate such rules and regulations, and take such other action as it deems necessary, not inconsistent with the provisions of this act, to carry out the provisions of this act." In an opinion in April, 1940, defendant commission stated its administrative definition of the term "agricultural labor" in part as follows:

"The following is a definition of agricultural labor as of January 1, 1940:

"The term 'agricultural labor' includes all services performed—  *  *  *

"(4) In *handling,* planting, drying, packing, packaging, *processing,* freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations *or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market.* The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with  *  *  *  any agricultural  *  *  *  commodity *after its delivery to a terminal market for distribution for consumption.*"

In its brief defendant states its position as follows:

"This commission agrees  *  *  *  that 'agricultural labor' became an exempt employment under the Michigan unemployment compensation act, *  *  *  that the status of the services involved herein must be determined by an application of the (above-quoted) definition of 'agricultural labor' which was adopted and promulgated by the commission administratively. However, the commission believes that the lower court erred in its interpretation of this definition and in its application to the facts in the case at bar.

"It is the contention of this commission that the processing of beans by  *  *  *  (plaintiff) was not as an incident to the preparation for market within the meaning of that definition; that the term 'market' as used in subsection 4 of the definition of 'agricultural labor' refers to the market of the farmer; that when the farmer sells his beans to *  *  *  (plaintiff), he has marketed them; that the cost of hand-picking the beans is not paid for by the farmer but rather is used as the basis of determining the value of thresher-cut beans."

We note that the commission's definition of the term "agricultural labor," as above quoted, was identical with the definition of said term in the amendment of the social security act (Federal unemployment tax act) adopted August 10, 1939 (53 Stat. at L. 1392, 1396 [26 USCA, § 1607 (1[4])]). However, such amendment of the social security act was subsequent to June 22, 1939, the effective date of the 1939 amendment of the Michigan act and, therefore, was not included in said act. We also note that the definition of the term "agricultural labor" in the 1942 amendment of the Michigan unemployment compensation act (Act No. 18, Pub. Acts 1942 [2d Ex. Sess.]) is identical, in part, with

the definition in the above-mentioned 1939 amendment of the social security act and with the commission's definition of said term.

The commission's administrative definition of the term ''agricultural labor,'' while not binding on the courts, is nevertheless entitled to consideration. In *Wayne County* v. *Auditor General,* 250 Mich. 227, 236, we said:

''Practical construction given to doubtful or obscure statutes by public officers, the discharge of whose duties are affected thereby, will be considered and given great weight by courts in construing such laws. *Owosso Union School District Board of Education* v. *Goodrich,* 208 Mich. 646; *Commerce-Guardian Trust & Savings Bank* v. *State,* 228 Mich. 316; *People* v. *Robinson,* 241 Mich. 497; 36 Cyc. p. 1141.''

See, also, *McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488 (51 Sup. Ct. 510, 75 L. Ed. 1183); *Brewster* v. *Gage,* 280 U. S. 327 (50 Sup. Ct. 115, 74 L. Ed. 457); 2 Sutherland on Statutory Construction (3d Ed.), pp. 512, 515, §§ 5103, 5105.

The 1942 amendment of the Michigan unemployment compensation act embodying the identical language of the commission's definition of the term ''agricultural labor,'' while not controlling in the present case, can at least be considered as a clarification of that term as used in the preceding 1939 enactment. In 1 Vom Baur, Federal Administrative Laws, p. 485, § 487, it is stated:

''Statutory incorporation of construction. Where regulations construing a statute are incorporated into a reenactment of that statute, they are intended to clarify, not to change the law, even though the later statute is not retroactive.''

The courts have recognized the rule that subsequent legislation may be considered as a clarifica-

tion of and aid in the interpretation of prior legislation upon the same subject. See *Hartley* v. *Commissioner of Internal Revenue,* 295 U. S. 216 (55 Sup. Ct. 756, 79 L. Ed. 1399); *Luckenbach Steamship Co.* v. *United States,* 280 U. S. 173 (50 Sup. Ct. 148, 74 L. Ed. 356); *Tiger* v. *Western Investment Co.,* 221 U. S. 286 (31 Sup. Ct. 578, 55 L. Ed. 738); *Commissioner of Internal Revenue* v. *Liberty National Co.* (C. C. A.), 58 Fed. (2d) 57; *Big Wood Canal Co.* v. *Unemployment Compensation Division,* 61 Idaho, 247 (100 Pac. [2d] 49).

In passing, we mention that the 1941 amendment of section 42 (7) (n) of the Michigan unemployment compensation act provided in substance that if an employer had obtained a decision in writing from an agent of the United States bureau of internal revenue holding that certain specified services were exempt under the internal revenue code, such ruling should be conclusive upon the commission unless the commission, a referee or the appeal board "upon substantial evidence" determined that such services constituted employment under the unemployment compensation act. The record shows that in December, 1939, the United States treasury department gave its written opinion that "services performed after December 31, 1939, by employees of the Michigan Bean Company in handling, drying, processing, grading, sorting, and packing beans * * * constitute 'agricultural labor' for purposes of the Federal insurance contributions act and the Federal unemployment tax act, as amended." However, such decision or ruling of the treasury department is not determinative of the question before us in the present case. In *Colony Town Club* v. *Michigan Unemployment Compensation Commission,* 301 Mich. 107, 115, we said:

"The decision of the commissioner of internal revenue that the Colony Town Club was not re-

quired to pay the Federal security tax or the Federal income tax is not conclusive and binding upon the appeal board of the unemployment compensation commission or upon the State courts under either the 1939 or 1941 amendments to section 42 of the Michigan unemployment compensation act.''

It seems clear that the term ''agricultural labor,'' included by reference in section 42 (7) (n) of the 1939 amendment, created a broader and more comprehensive exemption than the term ''labor performed on a farm'' as used in section 42 (5) (d) of the original 1936 act. In considering the term ''agricultural labor'' in connection with payments under an unemployment compensation act, in *Carstens Packing Co.* v. *Industrial Accident Board*, 63 Idaho, 613 (123 Pac. [2d] 1001), the court said in part, p. 619:

''It will be observed that the exception is of 'agricultural labor,' and nothing is said in the statute about farm labor or agricultural labor performed on farms. The term 'agricultural labor' is much broader, and more comprehensive than is the term 'farm labor.' ''

In *Henry A. Dreer, Inc.*, v. *Unemployment Compensation Commission*, 127 N. J. Law, 149 (21 Atl. [2d] 690), it is stated:

''The statute being remedial, should of course be liberally construed as to its purview. But the controlling proviso excluding 'agricultural labor' is broad and sweeping, and should not be whittled down by narrowness of construction.''

A situation somewhat similar to that involved in the present case was considered in *Batt* v. *Unemployment Compensation Division*, 63 Idaho, 572 (123 Pac. [2d] 1004, 139 A. L. R. 1157). In that case the employer was engaged in the growing and processing of

vegetables. He also processed vegetables which he purchased from other growers, and vegetables which he handled on consignment. The processing, consisting of cleaning, washing, cooling, grading, and packaging, was to make the vegetables salable under State and Federal regulations and was done in processing sheds not located on his farm premises. The court unanimously agreed, p. 581, "that the activities of the appellant and his employees on products purchased outright by him from other producers and growers" constituted "agricultural labor" and were exempted under the State unemployment compensation statute. The court said in part, p. 576:

"It is clear that the appellant does, for hire, just such work as the farmer would have to do himself or hire someone else to do, on the farm or elsewhere, in preparation of his products for market. For this labor, the appellant received and deducted from the sale price 'the expenses including a charge for processing and a brokerage charge,' and paid the balance to the farmer."

In 2 Am. Jur. pp. 395, 396, § 2, it is stated:

"Agriculture, in the broad and commonly-accepted sense, may be defined as the science or art of cultivating the soil and its fruits * * * and the rearing, feeding, and management of livestock thereon, *including every process and step necessary and incident to the completion of products therefrom for consumption or market* and the incidental turning of them to account. The term is broader in meaning than 'farming.'"

In 3 C. J. S. p. 366, § 1, the term "agriculture" is defined in part as follows:

"In a broader sense, 'agriculture' is the science or art of the production of plants and animals use-

ful to man; in its general sense, 'agriculture' in-cludes gardening or horticulture, fruit growing, and *storage and marketing.*"

From the record it appears that in the earlier days of the bean industry in Michigan, the picking proc-ess was usually performed by the producer on his farm. However, with State and trade regulations requiring processing in order to separate the beans into grades, it is now generally deemed more prac-tical and advantageous to have this work done by commercial firms specializing in the business of processing and distributing farm commodities. In the case of *Cassady* v. *Hiatt & Lee,* 150 Fla. 721 (8 South. [2d] 661), in considering whether or not plaintiff's employees were engaged in "agricultural labor," the court said:

"It is the character of labor performed by the employee that must determine its application rather than the character of the employer's business."

See, also, *Batt* v. *Unemployment Compensation Division, supra; Carstens Packing Co.* v. *Industrial Accident Board, supra.*

In its administrative definition hereinbefore quoted, the commission defined "agricultural labor" as including all services performed in "processing * * * fruits and vegetables, as an incident to the preparation of such fruits or vegetables for mar-ket," and further stated that "agricultural labor" *shall not* include "service performed in connection with * * * any agricultural * * * commodity *after* its delivery *to a terminal market* for distribu-tion for consumption." It seems clear that plain-tiff's elevator was not a terminal market distribut-ing to users for consumption, but was rather in the position of a middleman between the farmer and the terminal market. The director of the bureau of

foods and standards of the State department of agriculture testified in part:

"*Q.* Would you say, Mr. Nelson, that the beans have to be inspected, graded, and inspected according to grade before they go into distribution for consumption?

"*A.* Yes, sir.

"*Q.* And that that is required by the State inspection services?

"*A.* Yes, sir."

We believe that the word "market" as used in the commission's definition of the term "agricultural labor" refers to the terminal market actually selling or distributing for use and consumption. Therefore, the sale of beans to plaintiff was not a sale to a terminal market for distribution to the consumer.

If the farmer or his employees performed the work of picking and processing the beans, such services would clearly be "agricultural labor" within the meaning of the 1939 amendment. However, when the price he receives for his beans is affected by the cost of picking and processing, it may reasonably be said that the farmer is paying for such services. The nature or character of the services is not changed by the fact that the work is done in an elevator instead of on the farm. Claimant's work as a bean picker was incident to preparing the beans for market, and we conclude that her services constituted "agricultural labor" within the intent and meaning of section 42 (7) (n) of the 1939 amendment of the Michigan unemployment compensation act.

In an opinion in the present case, Mr. Justice WIEST quotes section 42 (7) (d) of the 1939 act (section 42 [5] [d] of the 1936 act) as being "the statute involved." He fails to include section 42 (7) (n),

which incorporated, by reference, title 9 of the social security act. See said subsections hereinbefore quoted.

He cites the case of *Colony Town Club* v. *Michigan Unemployment Compensation Commission, supra,* as holding in effect that the 1939 amendment of the Michigan unemployment compensation act could not, by reference, incorporate title 9 of the Federal social security act which exempted "agricultural labor." We did not so hold in that case. We determined only that the decision of the commissioner of internal revenue, exempting plaintiff club from the payment of the Federal social security tax and Federal income tax, was not binding upon the Michigan unemployment compensation commission and the courts of this State.

The 1936 act excepted from the term employment only "labor performed on a farm by an employee of the owner or tenant." Section 42 (7) (n) of the 1939 amendment further excepted from the term employment "any service not included as 'employment' under title 9 of the social security act," which act expressly excepted "agricultural labor." As before pointed out, "the term 'agricultural labor' is much broader, and more comprehensive than is the term 'farm labor,' " *Carstens Packing Co.* v. *Industrial Accident Board, supra.* The term agricultural labor "is broad and sweeping, and should not be whittled down by narrowness of construction," *Henry A. Dreer, Inc.,* v. *Unemployment Compensation Commission, supra.*

In *Employment Security Commission* v. *Arizona Citrus Growers,* 61 Ariz. — (144 Pac. [2d] 682 [decided January 4, 1944]), the court said:

"We are aware that the pursuit of definitions of 'agricultural laborers' through the cases leads to confusion because generally the case definitions have

grown out of special statutory phraseology, or out of judicial effort to conform to legislative intent.''

The factual situations and statutory provisions involved in the several cases cited by Mr. Justice Wiest readily distinguish them from the present case. In *National Labor Relations Board* v. *Tovrea Packing Co.* (C. C. A.), 111 Fed. (2d) 626 (certiorari denied, *Tovrea Packing Co.* v. *National Labor Relations Board,* 311 U. S. 668 [61 Sup. Ct. 28, 85 L. Ed. 429]), the board, in pursuance of the national labor relations act (49 Stat. at L. 449 [29 USCA, § 151 *et seq.*]), petitioned for enforcement of its order that the packing company cease unfair labor practices and reinstate nine discharged workmen. Section 2 of the national labor relations act provided that ''the term 'employee' * * * shall not include any individual employed as an agricultural laborer.'' Defendant was engaged in the general meat packing business and purchased, fed, slaughtered, processed, and marketed livestock. The nine employees involved in the labor dispute worked in the feed mill and feeding pens adjoining the packing plant. In holding that such employees were engaged in industrial labor as distinguished from agricultural labor and were not within the exception of ''agricultural laborer,'' the court said in part, p. 628:

''The feed mill and feeding pens adjacent to the packing plant are maintained *as an incident to and not independent of the operation of the packing plant.* * * *

''Here we do not have stock raising or feeding as an incident to a stock ranch, nor do we have stock feeding or conditioning as a separate activity, but we do have stock ready for conditioning and fattening confined in relatively small corrals and fed intensively for short spaces of time as an incident to

a meat slaughtering and packing industrial enterprise. The elements of agricultural labor as distinguished from nonagricultural labor, seems entirely lacking.''

The factual situation involved in the *Tovrea Case* clearly distinguishes it from the present case.

In *Latimer v. United States,* 52 Fed. Supp. 228, the plaintiffs sought to recover social security taxes which they had paid between 1936 and 1939 under the social security act of August 14, 1935 (49 Stat. at L. 620 [42 USCA, § 301 *et seq.*]). Plaintiffs contended that the services of their employees should be classified as ''agricultural labor'' and, therefore, exempted from taxation. It should be noted that the events involved occurred prior to the August 10, 1939, amendment to the social security act. The court said in part, p. 230: ''It is clear that the *broadened definition* of 'agricultural labor' contained in the amendments of August 10, 1939, to the social security act are not applicable to these cases and that each of these actions is governed by the definition of 'agricultural labor' in regulations'' of the treasury department, which defined agricultural labor as follows:

''The term 'agricultural labor' includes all services performed—

'' (a) By an employee, *on a farm,* in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of livestock, bees, and poultry; or

'' (b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. *Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee' of the owner or tenant of the farm on which the materials in their raw or natural state were produced,* and unless such processing, packing,

packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations."

In said *Latimer Case* the court discussed the different kinds of work performed by the employees of the respective plaintiffs and applied the above-quoted definition in determining whether or not their work constituted "agricultural labor." As such case arose prior to the "broadened definition of 'agricultural labor'" contained in the 1939 amendment to the social security act and was decided under the restricted definition of agricultural labor in the treasury department regulations, the decision is not determinative of the question before us arising under section 42 (7) (n) of the 1939 amendment of the Michigan unemployment compensation act.

The case of *Bowie* v. *Gonzalez* (C. C. A.), 117 Fed. (2d) 11, arose under the Federal fair labor standards act of 1938 (52 Stat. at L. 1060 [29 USCA, § 201 *et seq.*]), which exempted persons "employed in agriculture," defined in section 3 (f) of the act as the "production, cultivation, growing, and harvesting of any agricultural or horticultural commodities." Such statutory definition clearly differentiates that case from the case before us.

The case of *H. Duys & Co., Inc.,* v. *Tone,* 125 Conn. 300 (5 Atl. [2d] 23), involved an assessment by the administrator of the Connecticut unemployment compensation act against plaintiff, based upon wages paid to persons employed in its warehouse in the processing and handling of shade tobacco. Plaintiff contended that its employees were engaged in agricultural labor and that the wages paid them were exempt from the assessment. The facts involved in this case occurred prior to the 1939 amendment of the Federal social security act. The regulation adopted by the administrator of the

Connecticut unemployment compensation act defined agricultural labor in identical terms as those hereinbefore quoted in the case of *Latimer* v. *United States, supra.*

The court held that the services of the employees of H. Duys & Company in the processing and handling of shade tobacco did not constitute agricultural labor. However, this decision was based upon a definition of agricultural labor which restricted it to services "by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced." Such holding, under that restricted definition, is not determinative of the question in the case before us.

The case of *Cowiche Growers* v. *Bates,* 10 Wash. (2d) 585 (117 Pac. [2d] 624), is distinguishable from the present case, as it involved a statute defining exempted agricultural labor as "services customarily performed by a farm hand on a farm for the owner or tenant of a farm" (p. 594).

The statutory provisions and factual situations involved in the cases of *Chester C. Fosgate Co.* v. *United States* (C. C. A.), 125 Fed. (2d) 775, and *North Whittier Heights Citrus Ass'n* v. *National Labor Relations Board* (C. C. A.), 109 Fed. (2d) 76, distinguish them from the case before us.

We reiterate our conclusion that claimant's work as a bean picker was incident to preparing the beans for market and constituted "agricultural labor" within the intent and meaning of section 42 (7) (n) of the 1939 amendment of the Michigan unemployment compensation act.

The judgment of the trial court should be affirmed. A public question being involved, no costs are allowed.

NORTH, C. J., and BOYLES, J., concurred with STARR, J.

Wiest, J. I do not entertain the opinion expressed by Mr. Justice Starr.

The status of the employee of the elevator company is to be determined as of 1940 under the provisions of Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 324, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8485–41 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*), effective June 22, 1939, wholly unaffected by subsequent legislative amendment, Federal statute or Federal departmental or bureau holding.

If a farmer sells his crop of beans as the same come from the threshing machine and is paid the value thereof by a purchasing elevator company, is such purchaser, and his employee, in preparing the beans for resale, engaged in labor "incident to ordinary farming operations," or agricultural labor? The fact that a deduction, if any, in price paid the farmer, is figured by the purchaser to meet the expense of sorting the beans and thus render the same marketable—is that an incident of ordinary farming operations or agricultural labor?

In the instance at bar the bean company bought and owned the beans and labor thereafter, thereon, was by an employee of the company in behalf of its commercial industry and in no sense an incident to ordinary farming operations or agricultural labor.

The beneficient purposes of the unemployment compensation act should be fulfilled so far as its provisions permit without strained construction.

Old-time, simple home methods have long since been supplanted by modern commercial methods and industrial progress.

The Michigan legislature, even if right in adopting Federal nomenclature of employment, did not and could not subject the act to future congressional

action or subsequent Federal bureau construction for, to do so, would render the act not that of State will and determination but that of a body wholly foreign in point of law to State legislative power and sovereignty.

Upon this point, in *Colony Town Club* v. *Michigan Unemployment Compensation Commission,* 301 Mich. 107, an opinion by Mr. Justice BOYLES, was stated in no uncertain terms the opinion of this court, and we quote the following from that case:

"Appellant further contends that the decision of the commissioner of internal revenue is final and binding because of an amendment to that effect added to the Michigan statute by the 1939 legislature. This amendment (Act No. 324, § 42, Pub. Acts 1939 [Comp. Law Supp. 1940, § 8485-82, Stat. Ann. 1940 Cum. Supp. § 17.545]) provides:

" '(7) The term "employment" shall not include: * * *

" ' (n) Any service not included as "employment" under title 9 of the social security act.'

"This amendment, if given the construction claimed for it by appellant, is unconstitutional in that it attempts to delegate to a Federal agency the final decision regarding the interpretation and construction to be placed upon a State statute. It would make the decision of the commissioner of internal revenue as to who is entitled to exemption from paying the Michigan tax conclusive and binding upon the Michigan unemployment compensation commission, the appeal board, and the State courts. Such authority cannot be delegated by the legislature." (Citing many cases).

There was a time when the farmer sheared his sheep and the housewife carded the fleece and made homespun cloth but that is of long-time past. The farmer now sells the fleece to enter the channels of

commerce and industry and it would be a far cry to hold that commercial weaving of cloth is an incident in the ordinary course of farming or agricultural labor. Many other examples might be recited where the old-time methods have been entirely supplanted by modern commercial and industrial enterprise. The present day regulations as to navy beans, in grading and other requirements, in fitting the same for market recognize the commercial and industrial side and not the agricultural or production side of the matter.

In the instance at bar, beans were purchased by the elevator company for the purpose of resale upon the purchaser complying with public regulations in culling, grading and fitting the same for market.

Modern commercial and industrial enterprises gave need to regulations wholly apart from any thought of agricultural labor and the holdings connecting such labor with farm labor have a basis of reasoning too tenuous for me to adopt.

It may be well at this point to quote the statute involved in this case:

" (7) The term 'employment' shall not include:
\* \* \*

" (d) Labor performed on a farm by an employee of the owner or tenant of the farm in connection with the cultivation of the soil and harvesting of crops or the raising and feeding of livestock, bees, and poultry, or in connection with the. packing, packaging, transportation or marketing of these materials or articles when carried on as an incident to ordinary farming operations."

There may have been a time when a farmer raised a few beans and handpicked the same around the home table winter evenings but, in modern times,

on the advent of the threshing machine in place of the flail, under the commercial demand for Michigan beans, the home method has gone the way of wool carding and home spinning, and the cleaning of beans has become an industry, wholly apart from being an incident of ordinary farming operations.

Upon the subject here involved, see *National Labor Relations Board* v. *Tovrea Packing Co.* (C. C. A.), 111 Fed. (2d) 626 (certiorari denied, *Tovrea Packing Co.* v. *National Labor Relations Board,* 311 U. S. 668 [61 Sup. Ct. 28, 85 L. Ed. 429]), where the packing company's employees, working in a feed mill and feeding pens adjacent to the packing plant, were held not agricultural laborers.

*Latimer* v. *United States* (October 25, 1943), 52 Fed. Supp. 228, workers were engaged in washing, grading, packing, selling, marketing and shipping citrus fruits purchased outright from growers.

*Bowie* v. *Gonzalez* (C. C. A.), 117 Fed. (2d) 11, processing sugar cane, held the practice, in order to be included within the term "agriculture," must be performed by a farmer as an incident to farm operations.

*H. Duys & Co., Inc.,* v. *Tone,* 125 Conn. 300 (5 Atl. [2d] 23), warehouse purchasing from growers, tobacco in the leaf and processing the same for market.

*Cowiche Growers, Inc.,* v. *Bates,* 10 Wash. (2d) 585 (117 Pac. [2d] 624), washing, sorting, packing and storing fresh fruits for market.

*Chester C. Fosgate Co.* v. *United States* (C. C. A.), 125 Fed. (2d) 775, processing and marketing fruit by employees of a purchasing company, was held not agricultural labor. See, also, *North Whittier Heights Citrus Ass'n* v. *National Labor Relations Board,* 109 Fed. (2d) 76, certiorari denied, 310 U. S. 632 (60 Sup. Ct. 1075, 84 L. Ed. 1402).

I hold that where a farmer raises a field of beans and, when threshed, takes the machine run to an elevator, receives pay for the same, the elevator stores the beans with many other like purchases, later cleans them for market and, in this industrial process, employs workmen, as a matter of law, his workmen, so employed, are not engaged in farm or agricultural labor. The judgment is reversed, with costs to appellant.

BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred with WIEST, J.