MILLER v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket Nos. 62962, 62963. Argued January 9, 1980 (Calendar No. 13).
—Decided March 10, 1981. Rehearing denied 411 Mich —.

Linda Saltzman Miller, for herself and as next friend of Dennis
and Karla Saltzman, her minor children, the surviving depen-
dents of Carl Saltzman, who was killed in an automobile
accident, brought an action against State Farm Mutual Auto-
mobile Insurance Company for survivors' benefits under a no-
fault insurance policy. At the time of his death, the decedent's
gross pay was $806 per month. State Farm had refused the
plaintiffs' claim for benefits because the family received $614
per month in Social Security survivors' benefits, which ex-
ceeded the decedent's net income after taxes and a "consump-
tion factor" of 22 percent for the decedent's personal expenses
had been deducted. The St. Joseph Circuit Court, Robert E. A.
Boyle, J., granted judgment for the plaintiffs, finding that the
defendant was not entitled to set off the Social Security bene-
fits, that the no-fault survivors' benefits for the family should

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 7, 17] 7 Am Jur 2d (Rev), Automobile Insurance § 363.
    22 Am Jur 2d, Death §§ 153, 154.
    Pension, retirement income, social security payments, and the like,
      of deceased, as affecting recovery by parent in death action. 81
      ALR2d 949.
    Validity and construction of "no-fault" automobile insurance plans.
      42 ALR3d 229.
[2, 4] 7 Am Jur 2d (rev), Atuomobile Insurance § 340.
    22 Am Jur 2d, Death § 152 et seq.
[3] 22 Am Jur 2d, Death § 152 et seq.
[5, 14] 22 Am Jur 2d, Deat § 211.
[8, 9, 15, 17, 22] 7 Am Jur 2d (Rev), Atuomobile insurance § 340.
[9, 18, 20, 23] 22 Am Jur 2d, Death § 153.
[10] 22 Am Jur 2d, Death §§ 29, 60 et seq.
[11, 12] 22 Am Jur 2d, Death § 69.
[13] 22 AmJur 2d, Death § 154.
[16, 19, 21, 22] 73 Am Jur 2d, Statutes § 194.
[19] 73 Am Jur 2d, Statutes § 145.
[21] 73 Am Jur 2d, Statutes §§ 170, 171.

be equal to the decedent's gross pay, and that after June 25, 1976, the date of Mrs. Saltzman's remarriage, the defendant should pay $403 per month to each of the two Saltzman children. The Court of Appeals, Beasley, P.J., and D. E. Holbrook, J. (G. R. Cook, J., concurring), reversed, holding that decedent's gross income should be reduced by a "personal consumption factor" but not by any adjustment for taxes to determine the benefits payable to the plaintiffs and that Social Security survivors' benefits could be set off against the no-fault benefits in accordance with a decision of the Supreme Court in the meantime (Docket No. 78-512). The parties appeal. In an opinion by Justice Ryan, joined by Justices Fitzgerald and Moody, and by Justice Williams except as to the remarriage question, and concurred in on the remarriage question by Justice Levin, joined by Chief Justice Coleman and Justice Kavanagh, the Supreme Court *held:*

1. The no-fault insurance act provides that survivors' benefits consist of "contributions of tangible things of economic value" which the dependents would have received for support from the deceased if he had not suffered the injury. The primary and generally understood meaning of the words suggests that the amount of benefits to be paid is determined by the amount which constituted the family's gross income, deducting expenditures for all purposes other than support of the dependents. Nothing in the statutory language suggests that the fund is limited to wages. In today's complex economic system, the support which many persons contribute to their dependents includes not only wages but hospital and medical insurance benefits, disability coverage pensions, investment income, annuity income and other benefits. Had the Legislature intended to limit survivors' benefits to what the eligible dependents would have received from wages and salary alone, it could be expected to have said so. It chose instead far broader language which, on its face, suggests the inclusion of benefits derived for family support from other sources.

2. The legislative history of this provision of the no-fault act indicates an intent that survivors' benefits should, at least roughly, correspond to damages recoverable under the wrongful death act for economic loss, which include the loss of financial support from the deceased and the loss of services that the survivor would have received from the deceased had he lived. Damages for wrongful death depend upon the financial loss actually incurred by the survivors as a result of the decedent's death. Certainly, the decedent's income from wages or salary is almost always a significant factor in calculating the actual

financial loss incurred by the survivors. However, the loss also includes any employment-related fringe benefits and other items available for the support of dependents. The value of such items must be taken into account in measuring the survivors' benefits. In many cases, the total amount will exceed the income from wages or salary. In this case, however, the plaintiffs made no allegation and offered no evidence of any contributions to their support by the decedent other than his income from wages. Therefore, the trial court properly limited the calculation to gross income from wages.

3. Reliance by the Court of Appeals on the statutory provision for the tax adjustment of work loss benefits and the absence of such a provision for survivors' benefits to decide that the survivors' benefits should not be reduced by the amount of income taxes that the decedent would have paid was misplaced. Work loss benefits are limited, by definition, to the loss of income from wages or salary. They are not taxable, while the lost income which they replace would be taxable. The tax adjustment operates equitably, in most cases, where taxable income is replaced by work loss benefits. Survivors' benefits include the value of items other than wage and salary income. In many cases, the items which are included are not taxable; in some cases, the survivors' loss may involve only non-taxable items. Tax liability associated with income is an inescapable fact of modern economic life. It would be unrealistic, in measuring the financial loss actually incurred by surviving dependents, to fail to acknowledge that surviving dependents would not have received for their support that part of the decedent's income that he would have been required to pay in taxes. Moreover, the adjustment for taxes can be accurately based on readily ascertainable information, without unnecessary administrative delays or factual disputes. The statutory language that the survivors' loss consists of amounts that dependents "would have received" for support establishes that the Legislature intended that the amount of survivors' benefits should be adjusted for taxes that the deceased would have paid on taxable items included in the benefit calculation, and it was error to rule otherwise.

4. The statutory provision concerning survivors' benefits, after consideration of at least two alternative proposals, was enacted without the clause contained in one of the proposals, "less expenses of the survivors avoided by reason of the decedent's death". It is logical to conclude that the Legislature eliminated the clause for a reason, and most likely the reason was that it wished to preclude reduction of the survivors'

benefits by the decedent's "consumption factor". The insurer asks the Court to hold that the Legislature meant to say not only what it did not say explicitly, but what it explicitly rejected. The goal of the no-fault insurance system is to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation for certain economic losses. The no-fault act is designed to minimize administrative delays and factual disputes that would interfere with the goal of expeditious compensation for damages suffered in motor vehicle accidents. Calculation, in every case, of a "consumption factor" attributable to the decedent's personal expenses would be inconsistent with the declared legislative purpose of expeditious settlement of survivors' claims without complex factual controversy. A family is not run like a commercial enterprise; if the expenses of a family which are attributable to the decedent can be calculated at all, such a factual determination would involve interminable controversy and disproportionate expense, and the amount of such a reduction is likely to be small in most cases. Therefore, the calculation of the survivors' benefits should not include an adjustment for the personal consumption expenses of the decedent.

5. (Justice Williams did not concur in this part.) For purposes of qualification for survivors' benefits, dependency is determined by the relation of the claimant to the deceased at the time of the death. However, the no-fault act declares that survivors' benefits accrue not when the injury occurs, but as the survivors' loss is incurred. Upon the occurrence of certain specified events, including the remarriage of a dependent surviving spouse, the qualification for survivors' benefits terminates, that survivor's individual loss is no longer incurred, and it is necessary to consider the amount of benefits payable thereafter to the remaining surviving dependents. The proper method is to reduce the survivors' benefits when one of them is disqualified only by the contributions that the deceased would have made solely for the benefit of the disqualified dependent. Contributions which benefit the family as a whole would not be affected. Further, the adjustment should be made to the aggregate of the survivors' loss at the time of the decedent's death, before the application of the statutory ceilings. The judgment of the trial court as to the effect of plaintiff Miller's remarriage on the survivors' benefits for the remaining dependents is reversed.

Justice Levin, joined by Chief Justice Coleman and Justice Kavanagh, concurred with the Court in requiring an adjustment for taxes in calculating survivors' benefits and requiring a

recomputation of survivors' benefits upon remarriage of a surviving spouse. He dissented, however, from the conclusion that no adjustment for the personal expenditures of the decedent need be made, and would not reach the question what items, other than wages, constitute "contributions of tangible things of economic value" because the plaintiffs have not alleged or offered evidence of contributions other than wages, and therefore the question is not before the Court.

1. The Legislature used two different measures for two different situations under the no-fault insurance act; work loss, consisting of income from work the injured person is unable to perform because of his injury, where he survives his injury, and lost contributions to the family's support where he dies. The primary difference between the two is that wages committed exclusively to the personal expenditures of the injured person are part of work loss but are not part of the amount that would have been contributed for the support of the family. The opinion of the Court concludes that these personal expenditures need not be subtracted from total wages in calculating the amount that the injured person who dies would have contributed to his family's support. Since this subtraction is, typically and in this case, the only difference between the two measures, the Court effectively erases the distinction drawn by the statute and makes lost wages the measure of income loss in both situations. There is no basis for construing out of the statute a distinction that is clearly there. Had the Legislature intended that lost wages be the measure in both situations, it would not have used two different measures for the two different situations. The rationales advanced by the Court for construing this distinction out of the statute are not persuasive. An analysis of the purposes and antecedents of the survivors' loss provision indicates that the Legislature intended that the different language result in a different measure.

2. The first rationale advanced by the Court is based on the legislative history of the act, namely the adoption of the Senate version of the act rather than the substitute offered by the House. Both bills defined survivors' loss as the loss of "contributions" that the deceased would have made to his family, with the House substitute adding the clause "less expenses of the survivors avoided by reason of decedent's death". The Court concludes that in adopting the version without a subtraction for expenses of the survivors avoided by the death, the Legislature indicated that no subtraction should be made for the personal expenditures of the deceased in computing survivors' loss. The Court acknowledges that it has no evidence of the

legislative give and take that led to adoption of the Senate bill rather than that of the House, or whether this particular difference between the two bills was a factor in that choice, or, if this difference was a factor, what the Legislature intended to accomplish by not including the clause. With so much in doubt, it is questionable whether the mere choice of one bill over another is an adequate basis for negating a distinction clearly present in the language of the act.

3. The language of the "deleted" clause must be strained to make it mean what the Court asserts. Only by straining can the personal expenditures of the *deceased* be considered "expenses of the *survivors* avoided by reason of decedent's death". The correct meaning of the clause, one which indicates that it was not intended to refer to the deceased's personal expenditures, is revealed in the comments to the model act from which the clause was drawn. The example there given is that the clause would require the subtraction from a deceased child's financial contributions to the family of the family's expenses in rearing the child. The Court recognizes that the measure of survivors' loss under the act was patterned after the measure of survivors' loss under wrongful death acts. Under wrongful death acts compensating survivors' loss, however, the measure of recovery is not total earnings. A reduction must be made for the personal expenditures of the deceased. Further, the drafters' comments to both model acts on which the no-fault insurance act was based state that recovery was intended to be more rigorously confined to actual pecuniary loss than under most wrongful death acts. Failing to subtract the amount of wages which the deceased would have spent exclusively on himself, rather than contributed to his family for their support, defeats this intent by allowing recovery of an amount not actually lost.

4. The second rationale offered by the Court is that the difficulty and disproportionate expense of calculating the reduction for the decedent's personal expenditures is inconsistent with the legislative purpose of the expeditious settlement of claims without complex, time-consuming factual controversies. The use of such a purpose to negate a distinction clearly drawn in the statute establishes a troublesome precedent. Is the Court to review all factual determinations arguably called for under the no-fault insurance act on the basis of their cost? That is clearly not the Court's role. Moreover, it is difficult to understand how the Court can reject this calculation as inconsistent with the purpose of the no-fault insurance act, when the Court concludes that the act requires a virtually identical calculation when a surviving spouse loses the status as a dependent upon

remarriage. In the latter situation, the Court concludes that the no-fault insurance act requires a reduction of survivors' benefits by the amount of contributions that the deceased "would have made solely for the benefit of the disqualified dependent". This calculation is analogous to the calculation of the amount that would have been spent solely for the benefit of the deceased, and surely will be no less difficult or time-consuming. The Justices all agreed that the no-fault insurance act requires such a calculation as to the disqualified dependent. Such a calculation as to the deceased cannot, consistent with that conclusion, be rejected as contrary to the purposes of the act.

5. The Legislature intended that income that would have been committed to the personal expenditures of the decedent should not be considered as an economic loss of the survivors. Indeed, the Court does not argue that the loss of wages that would have been spent on the decedent is actually an economic loss of the survivors. Obviously, the survivors cannot be considered to have lost what they never would have received. To construe the statute otherwise defeats the general goal of reducing the cost of no-fault insurance through rigorously confining damages to genuine economic loss. Where the injured person survives the automobile accident, the Legislature expressly provided for full recovery of lost wages. Where the injured person dies, the Legislature did not use lost wages as the measure of damages but, rather, shifted to the survivors' loss of contributions to their support. The Court in effect rewrites the statute in those cases where the decedent had lived with the dependents to shift the measure back to lost wages. That is simply not what the Legislature has provided.

Reversed and remanded to the circuit court for further proceedings.

88 Mich App 175; 276 NW2d 873 (1979) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — CONTRIBUTIONS TO SUPPORT.

The calculation of survivors' benefits under the no-fault insurance act takes into account all demonstrable contributions to support that would have been made to the dependents by the deceased but for his death, less an adjustment for income taxes that would have been paid by the deceased had he lived, but without consideration of a "personal consumption factor" for personal expenses of the decedent which were avoided by reason of the death (MCL 500.3108; MSA 24.13108).

2. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — DAMAGES —
   WRONGFUL DEATH.

   The legislative history of the provision of the no-fault insurance
   act concerning the calculation of survivors' benefits indicates
   an intent that survivors' benefits should, at least roughly,
   correspond to damages recoverable under the wrongful death
   act for economic loss, which include the loss of financial sup-
   port from the deceased and the value of services that the
   survivor would have received from the deceased had he lived
   (MCL 500.3108, 600.2922; MSA 24.13108, 27A.2922).

3. DAMAGES — WRONGFUL DEATH.

   Damages for wrongful death depend upon the financial loss
   actually incurred by the survivors as a result of the decedent's
   death; it includes, in addition to income from the decedent's
   wages or salaries, employment-related fringe benefits and other
   items available for the support of dependents which are lost
   because of the decedent's death (MCL 600.2922; MSA
   27A.2922).

4. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — CONTRIBUTIONS
   TO SUPPORT — WORDS AND PHRASES.

   The "contributions of tangible things of economic value" to the
   support of dependents, under the no-fault insurance act, in-
   clude the value of items such as health insurance, pensions,
   and disability benefits provided by the decedent's employer, and
   investment income, annuity income and other items that are
   lost to the surviving dependents because of the decedent's death
   (MCL 500.3108; MSA 24.13108).

5. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — CONTRIBUTIONS
   TO SUPPORT.

   The calculation of survivors' benefits under the no-fault insurance
   act is properly limited to the decedent's gross income from
   wages where the claimants made no allegation and offered no
   evidence of any other contributions to their support by the
   decedent (MCL 500.3108; MSA 24.13108).

6. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — WORK LOSS
   BENEFITS — INCOME TAXES.

   Reliance upon the provision of the no-fault insurance act concern-
   ing work loss benefits to decide that survivors' benefits should
   not be reduced by the amount of income taxes that the dece-
   dent would have paid is misplaced because work loss benefits
   are limited, by definition, to the loss of income from wages or
   salary but survivors' benefits include the value of other items
   which contribute to the support of dependents, some of which

are not subject to income taxes (MCL 500.3107, 500.3108; MSA 24.13107, 24.13108).

7. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — CONTRIBUTIONS TO SUPPORT INCOME TAXES.

It would be unrealistic, in measuring the financial loss actually incurred by surviving dependents claiming benefits under the no-fault insurance act, to fail to acknowledge that the claimants would not have received for their support that part of the decedent's income that he would have been required to pay in taxes; the tax liability associated with income is an inescapable fact of modern economic life (MCL 500.3108; MSA 24.13108).

8. INSURANCE — NO-FAULT — LEGISLATIVE PURPOSE.

The goal of the no-fault insurance system is to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation for certain economic losses; the no-fault act is designed to minimize administrative delays and factual disputes that would interfere with the goal of expeditious compensation for damages suffered in motor vehicle accidents (MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*).

9. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — EXPENSES OF DECEDENT.

Calculation, in every case of a claim of survivors' benefits under the no-fault insurance act, of a "consumption factor" attributable to the decedent's personal expenses would be inconsistent with the declared legislative purpose of expeditious settlement of survivors' claims without complex factual controversy; if the expenses of a family which are attributable to the decedent can be calculated at all, such a factual determination would involve interminable controversy and disproportionate expense, and the amount of such a reduction of benefits is likely to be small in most cases (MCL 500.3108; MSA 24.13108).

10. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — DEPENDENCY — DISQUALIFICATION.

Dependency, for purposes of qualification for survivors' benefits under the no-fault insurance act, is determined by the relation of the claimant to the deceased at the time of the death, but may be terminated upon the occurrence of specific events; survivors' benefits accrue not when the decedent's injury occurs, but as the survivors' loss is incurred, so that when a dependency terminates, that survivor's loss is no longer incurred and the corresponding benefit no longer accrues (MCL 500.3108, 500.3110; MSA 24.13108, 24.13110).

11. Insurance — No-Fault — Survivors' Benefits — Dependency — Disqualification.

The proper method of adjusting survivors' loss benefits to reflect the disqualification of one of the claimants is to reduce them only by the contributions of tangible things of economic value that the deceased would have made solely for the benefit of the disqualified dependent; contributions which would benefit the family as a whole are not affected (MCL 500.3108, 500.3110; MSA 24.13108, 24.13110).

12. Insurance — No-Fault — Survivors' Benefits — Dependency — Disqualification.

The adjustment of survivors' benefits made when one of the claimants becomes disqualified as a dependent under the no-fault insurance act must be made to the aggregate of the survivors' loss at the time of the decedent's death, before application of the statutory ceilings for survivors' benefits payable (MCL 500.3108, 500.3110; MSA 24.13108, 24.13110).

Opinion Concurring in Part and Dissenting in Part by Levin, J.

See headnotes 6, 7, 10-12.

13. Insurance — No-Fault — Survivors' Benefits — Expenses of Decedent — Taxes.

*The calculation of survivors' benefits under the no-fault insurance act requires an adjustment for income taxes that would have been paid by the deceased had he lived (MCL 500.3108; MSA 24.13108).*

14. Appeal — Issues on Appeal — Insurance — No-Fault — Survivors' Benefits — Contributions to Support.

*The Supreme Court should not reach the question what items, other than wages, constitute "contributions of tangible things of economic value" to survivors under the no-fault insurance act where the plaintiff survivors have not alleged or offered evidence of contributions other than wages, and therefore the question is not before the Court (MCL 500.3108; MSA 24.13108).*

15. Insurance — No-Fault — Survivors' Benefits — Work Loss Benefits — Damages — Contributions to Support — Wages.

*The Legislature used two different measures for benefits under the no-fault insurance act; where the injured person survives the automobile accident the Legislature expressly provided for full recovery of lost wages, but where the injured person dies the Legislature shifted the measure of damages to the survi-*

vors' loss of contributions to their support (MCL 500.3107[b], 500.3108; MSA 24.13107[b], 24.13108).

16. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

It is questionable whether the mere choice by the Legislature of one bill over another is an adequate basis for negating a distinction clearly present in the language of the act where there is no evidence of the legislative give and take that led to the adoption of the bill, or whether the particular difference between the two bills was a factor in that choice, or, if the difference was a factor, what the Legislature intended to accomplish by not including the clause.

17. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — DAMAGES — WRONGFUL DEATH — EXPENSES OF DECEDENT.

The measure of survivors' benefits under the no-fault insurance act was patterned after the measure of survivors' loss under wrongful death acts; however, the drafters' comments to the model acts on which the no-fault insurance act was based state that recovery was intended to be more rigorously confined to actual pecuniary loss than under most wrongful death acts, and failing to subtract the amount of wages which the deceased would have spent exclusively on himself, rather than contributed to his family for their support, defeats the intent by allowing recovery of an amount not actually lost (MCL 500.3108; MSA 24.13108).

18. DAMAGES — WRONGFUL DEATH — SURVIVORS' LOSS — EXPENSES OF DECEDENT.

The measure of damages under wrongful death acts compensating survivors' loss is not total earnings of the deceased; a reduction must be made for personal expenditures of the deceased (MCL 600.2922; MSA 27A.2922).

19. INSURANCE — NO-FAULT — STATUTES — CONSTRUCTION.

It clearly is not the role of the Supreme Court to review all factual determinations arguably called for under the no-fault insurance act on the basis of their cost-effectiveness; therefore, that the difficulty and disproportionate expense of calculating certain benefits is inconsistent with the legislative purpose of the expeditious settlement of claims should not be used to negate a distinction clearly drawn in the statute (MCL 500.3101 et seq.; MSA 24.13101 et seq.).

20. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — EXPENSES OF DECEDENT — DEPENDENCY — DISQUALIFICATION.

A reduction of survivors' benefits by the amount of wages which

*the deceased would have spent exclusively on himself, rather
than contributed to his family for their support, cannot be
rejected as contrary to the purposes of the no-fault insurance
act to settle claims expeditiously where it is agreed that the no-
fault insurance act does require a similar reduction of survi-
vors' benefits when a surviving dependent becomes disqualified
for benefits (MCL 500.3108, 500.3110; MSA 24.13108, 24.13110).*

21. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

*A court is on insecure ground when it attempts to derive legisla-
tive intent from the enactment, without explanation, of one bill
rather than another; a court is on somewhat firmer, although
not solid, ground when it reasons from the express defeat of a
bill or amendment, but the interpretation of statutes cannot
safely be made upon mute intermediate legislative maneuvers.*

22. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — EXPENSES OF
    DECEDENT — LEGISLATIVE INTENT.

*Expeditious reparation of claims without complex factual contro-
versies is one of the general purposes of the no-fault insurance
act, but such general purposes cannot justify a court in reading
out of the act the requirement that there be a reduction of
survivors' benefits by the amount of wages which the deceased
would have spent exclusively on himself, rather than contrib-
uted to his family for their support (MCL 500.3108; MSA
24.13108).*

23. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — EXPENSES OF
    DECEDENT.

*Survivors' benefits under the no-fault insurance act do not in-
clude income that would have been spent on the personal
expenditures of the decedent; the decedent's expenses are not
part of the economic loss of the survivors because they cannot
be considered to have lost what they never would have received
(MCL 500.3108; MSA 24.13108).*

*Sloan, Risdon, Benefiel & Farrer* for plaintiffs.

*James, Dark & Brill* for defendant.

RYAN, J. Ongoing experience with the innova-
tive no-fault insurance act[1] continues to generate
litigation requiring judicial discovery of the intent

---

[1] 1972 PA 294, as amended; MCL 500.3101 *et seq.*; MSA 24.13101 *et
seq.*

of the Legislature concerning various provisions of the act.

This is such a case.

We granted leave in these consolidated appeals in order to decide:

"[Whether] survivors' benefits payable under § 3108 of the no-fault insurance act, MCL 500.3108; MSA 24.13108 [should] be computed on the basis of gross pay or take-home pay reduced by the amount of expenses avoided by reason of decedent's death."

And,

"[Whether] the remarriage of a widow reduce[s] the amount of survivor benefits due other dependents under § 3108 of the no-fault insurance act, MCL 500.3108; MSA 24.13108."

We hold:

(1) The language of § 3108, read in the light of its legislative history and in the context of the no-fault act as a whole, establishes that it is the legislative intention that the calculation of "contributions of tangible things of economic value" should include consideration of all demonstrable contributions that would have been made to the dependents by the deceased but for his death, less an adjustment for income-related taxes that would have been paid by the deceased had he lived, and without consideration of any personal consumption factor relating to expenses avoided by reason of the deceased's death; and

(2) The provisions of the no-fault act contemplate that the remarriage of a decedent's surviving spouse is an event which requires reduction in survivors' loss benefits due to the remaining sur-

viving dependents in an amount equal to the
amount of contributions of tangible things of eco-
nomic value which would have been provided by
the deceased, at the time of death, for the sole
benefit of the disqualified dependent.

(3) The decision of the Court of Appeals is re-
versed and the case is remanded to the circuit
court for proceedings consonant herewith.

I

Plaintiffs' decedent, Carl Saltzman, died as a
result of injuries he sustained in an automobile
accident which occurred on January 10, 1976. The
plaintiffs are Mr. Saltzman's widow, who is now
remarried, and his children. The defendant State
Farm was the decedent's no-fault automobile in-
surer at the time of the fatal accident.

Prior to his death, Mr. Saltzman held one part-
time and one full-time job, and his combined gross
monthly wages amounted to $806.

In the spring of 1976, after Mr. Saltzman's
death, the plaintiffs met with a State Farm claims
adjuster in order to calculate the plaintiffs' survi-
vors' loss benefits, as provided by § 3108 of the no-
fault insurance act, MCL 500.3108; MSA 24.13108.
Some time after this meeting, the plaintiffs were
informed by State Farm that they would be paid
no survivors' loss benefits under their decedent's
no-fault policy because they were entitled to Social
Security benefits which exceeded, and thereby
completely offset,[2] the amount of support that,
according to State Farm's calculations, the plain-
tiffs would have received from Mr. Saltzman had
he lived.

[2] See MCL 500.3109(1); MSA 24.13109(1). See also *O'Donnell v State
Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979).

In June of 1976, plaintiff Linda Miller, the decedent's widow, remarried.

On January 28, 1977, plaintiff Miller, individually and as next friend of her two minor children by Carl Saltzman, filed suit against State Farm seeking to recover survivors' loss benefits and other damages.

On April 22, 1977 the plaintiffs filed a motion for partial summary judgment pursuant to GCR 1963, 117.2(2), 117.2(3), claiming entitlement to survivors' benefits. The trial judge issued a written opinion on the motion on July 14, 1977. On August 24, 1977, a judgment was entered giving effect to the July 14th decision which provided, in pertinent part:

"The court further finds that no proofs have been submitted by plaintiffs other than the decedent's gross pay, as to the amount of contributions of tangible things of economic value that dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death, and finds that as a matter of law defendant under the provisions of its policy and § 3108 of the no-fault act owes said dependents the sum of $806 per month, said sum being the gross pay of decedent at the time of his death, no deduction being allowable for taxes or personal consumption of the deceased.

"The court further finds as a matter of law that after the remarriage of the widow on June 25, 1976, and until January 10, 1979, said defendant shall pay to each dependent child the sum of $403 per month."

The foregoing provisions of the August 24 judgment were subsequently incorporated into the trial court's final judgment which was entered on January 24, 1978, after a trial on other issues.

State Farm appealed to the Court of Appeals

which affirmed the trial court's ruling that, on the record presented in this case, survivors' loss benefits were to be calculated solely on the basis of the decedent's gross income, there having been no evidence offered by the plaintiffs as to other sources of "contributions of tangible things of economic value" to their support by their decedent. However, the Court of Appeals disagreed with the trial court's ruling that no "personal consumption factor" should be deducted from the decedent's gross pay in determining the amount of survivors' loss benefits payable under § 3108 and reversed on that point. The Court of Appeals did not discuss the trial court's ruling concerning the effect of the decedent's widow's remarriage on the amount of survivors' loss benefits which would thereafter be payable to the decedent's remaining surviving dependents, *Miller v State Farm Ins Co,* 88 Mich App 175; 276 NW2d 873 (1979).

Both the plaintiffs and the defendant then filed separate applications for leave to appeal in this Court. We granted both applications and ordered their consolidation. 406 Mich 1005 (1979).

## II

*What is the proper method of calculation of survivors' loss benefits under § 3108 of the no-fault insurance act, MCL 500.3108; MSA 24.13108?*

At the times relevant to this action, § 3108 of the no-fault insurance act provided:

"Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of his death would have received for support during their

dependency from the deceased if he had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death. The benefits payable for survivors' loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 and is [sic] not payable beyond the first 3 years after the date of the accident."

It is clear that survivors' loss benefits consist of two distinct elements:

(1) a loss, after the deceased's death, of contributions of tangible things of economic value, not including services, that the deceased's dependents would have received for support had he not died; and

(2) expenses not exceeding $20 per day, reasonably incurred by the deceased's dependents after his death, in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for his dependents' benefit had he not died.

The issue here concerns the correct method of calculation of the first of these elements.

There is no dispute that the plaintiffs were dependents of the deceased at the time of his death,[3] and therefore entitled to survivors' loss benefits. It is also undisputed that Carl Saltzman's entire contribution to his dependents' support of "tangible things of economic value" was from his income from wages alone.

State Farm contends that, in this case, survi-

---

[3] See 1972 PA 294, §§ 3110(1)(a), 3110(1)(c); MCL 500.3110(1)(a), 500.3110(1)(c); MSA 24.13110(1)(a), 24.13110(1)(c).

vors' loss benefits should equal the deceased's after tax "take home" (or net) pay less the amount of the deceased's personal expenses which are avoided by reason of his death, since it is that amount which the surviving dependents actually would have received for their support from Mr. Saltzman had he lived.

The plaintiffs respond that the trial court was correct in ruling that in this case the total survivors' loss benefits is an amount equal to the deceased's gross pay, without any adjustment.[4]

The Court of Appeals held that the survivors' loss benefits in this case should be based on the decedent's gross pay, without adjustment for taxes that would have been paid, less an amount characterized as a "consumption factor" reflecting the decedent's personal expenses that are avoided by the surviving dependents by reason of their insured's death. 88 Mich App 175; 276 NW2d 873 (1979).

We disagree with the lower courts' analyses and conclusions.

*In the calculation of survivors' loss benefits under § 3108, what is to be considered in determining the amount of "contributions of tangible things of economic value" that the surviving dependents of the deceased would have received for support had the deceased lived?*

---

[4] The trial court refused to allow a setoff of the Social Security survivors' benefits received by the plaintiffs, relying on *O'Donnell v State Farm Ins Co*, 70 Mich App 487; 245 NW2d 801 (1976).

After the trial court's decision, and before publication of the Court of Appeals decision in this case, we decided *O'Donnell v State Farm Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), in which we held that the set-off provision of the no-fault act, MCL 500.3109(1); MSA 24.13109(1), was constitutional, thereby reversing the Court of Appeals *O'Donnell* decision which had been relied upon by the trial court in this case. The Court of Appeals applied our decision in *O'Donnell* to this case and the issue is no longer contested by the parties.

In answering that question, our obligation is to discover and give effect to the Legislature's intention in enacting § 3108 as best we can determine it from the language employed in § 3108 and the no-fault act as a whole, and in light of such legislative history as is available. See *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301, 311; 273 NW2d 10 (1978); *Lansing v Lansing Twp,* 356 Mich 641; 97 NW2d 804 (1959). It is therefore necessary to examine that history in order to determine how the Legislature intended no-fault "survivors' loss" benefits to be measured. See *Ballinger v Smith,* 328 Mich 23, 30-31; 43 NW2d 49 (1950).

We turn first to an analysis of the language of the statute itself.

Of primary significance in the analysis is the determination of what is meant by the expression "contributions of tangible things of economic value" as it is used in § 3108.

Assigning to the words used in § 3108 their primary and generally understood meaning, it would appear uncontrovertible that the dollar amount of survivors' loss benefits must include the amount the survivors "would have received for [their own individual] support" had Mr. Saltzman not died. That suggests that the amount to be paid them is determined merely by ascertaining first of all the total amount of "tangible things of economic value" which constituted the family's gross "income" for a stated period and deducting therefrom such amounts as were required to be expended for all purposes other than their support and which, by reason of such requirement, would not have been available for their support. Nothing in the language of § 3108 suggests that the fund of "tangible things of economic value" is limited to

wages. In today's complex economic system, the "tangible things of economic value" which many persons contribute to the support of their dependents include hospital and medical insurance benefits, disability coverage, pensions, investment income, annuity income and other benefits. Had it been the intent of the Legislature to limit survivors' benefits to a sum equal to what eligible dependents would have received from wages and salary alone, it could be expected to have said so. It chose instead the far broader category of "contributions of tangible things of economic value" which, on its face, suggests the inclusion of benefits derived for family support from other and different sources. Our conclusion to that effect is fortified by consideration of the history of the legislation.

Section 3108 was derived from Senate Bill No. 782 of 1971[5] and the corresponding House Substitute for Senate Bill No. 782.[6] It is apparent that

[5] Section 8 of Senate Bill 782 of 1971 provided, in pertinent part:

"Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that persons who are dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death and expenses reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death."

[6] Sections 3101 and 3106 of the House Substitute for Senate Bill No. 782 provided, in pertinent part:

"Sec. 3101. This chapter shall be known and may be cited as the 'Lodge, McNeely, Heinze uniform motor vehicle accident reparations act'.

\* \* \*

"Sec. 3106. (1) 'Survivor' means a person who is entitled to receive benefits pursuant to Section 2922 of Act No. 236 of the Public Acts of 1961, as amended, being section 600.2922 of the Compiled Laws of 1948, by reason of the death of another person.

"(2) 'Survivor's economic loss' means after decedent's death loss of

the relevant provisions of those bills were based, in turn, upon provisions contained in the Motor Vehicle Basic Protection Insurance Act[7] (MVBPIA) and the Uniform Motor Vehicle Accident Reparations Act[8] (UMVARA) respectively.

contributions of things of economic value, not including services to his survivors, that his survivors would have received from the decedent had he not suffered the injury causing death, less expenses of the survivors avoided by reason of decedent's death.

"(3) 'Survivor's replacement services loss' means expenses reasonably incurred by survivors after decedent's death in obtaining ordinary and necessary services in lieu of those that decedent would have performed for their benefit had he not suffered the injury causing death, less expenses of the survivors avoided by reason of the decedent's death and which were not subtracted in calculating survivor's economic loss." 5 Mich House J (1972) 4113, 4115, 4118-4119.

[7] See Keeton & O'Connell, Basic Protection for the Traffic Victim: A Blueprint for Reforming Automobile Insurance (Little, Brown & Co, 1965), ch 7, pp 299 *et seq.*

Section 1.9(e) of the MVBPIA provides:

*"Survivors' loss.* Survivors' loss consists of (i) loss, after the date on which the deceased died, of contributions of tangible things of economic value (not including services) that survivors qualifying as persons suffering loss under the terms of section 1.11 of this Act would have received from the deceased had he not suffered the injury causing death and (ii) expenses reasonably incurred by such survivors after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit had he not suffered the injury causing death."

Compare to § 8 of Senate Bill No. 782, fn 5, *supra.*

[8] See 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, pp 50 *et seq.*

Section 1(a)(5)(iv) of the UMVARA provides:

" 'Survivor's economic loss' means loss after decedent's death of contributions of things of economic value to his survivors, not including services they would have received from the decedent if he had not suffered the fatal injury, less expenses of the survivors avoided by reason of decedent's death."

Section 1(a)(5)(v) of the UMVARA provides:

" 'Survivor's replacement services loss' means expenses reasonably incurred by survivors after decedent's death in obtaining ordinary and necessary services in lieu of those the decedent would have performed for their benefit if he had not suffered the fatal injury, less expenses of the survivors avoided by reason of the decedent's death and not subtracted in calculating survivor's economic loss."

Compare to §§ 3106(2) and 3106(3) of the House Substitute Bill, fn 6, *supra.*

The UMVARA was drafted by the National Conference of Commis-

In view of the Legislature's obvious reliance upon the relevant sections of the model acts, it is evident that it was cognizant of, and in agreement with, the policies which underlie the model acts' language.

The authors' comments on § 1.9(e) of the MVBPIA, which is in substance identical to § 9 of Senate Bill 782, are:

"In paragraph [§ 1.9](e), 'survivors' loss' is defined in a way somewhat similar to standards for damages under death acts, but with a more rigorous adherence to genuine economic loss than under most death acts. For example, loss of services of the deceased is not an allowable item itself; rather, the allowable item of this general nature is limited to 'expenses reasonably incurred * * * in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their [the survivors'] benefit had he not suffered the injury causing death.' " Keeton & O'Connell, Basic Protection for the Traffic Victim: A Blueprint for Reforming Automobile Insurance (Little, Brown & Co, 1965), p 400.

Similarly, the pertinent portion of Commissioners' Comments to §§ 1(a)(5)(iv) and 1(a)(5)(v) of the UMVARA, which are in substance identical to § 3106(2) of the House Substitute, is:

" 'Survivor's economic loss' and 'survivor's replacement services loss' are defined in a way analogous to

sioners on Uniform State Laws under a contract with the United States Department of Transportation. Work was commenced on the uniform act in May of 1971. Hill, *The Uniform Motor Vehicle Accident Reparations Act,* 8 The Forum 1 (1972).

The UMVARA was ultimately adopted by the National Conference of Commissioners in August of 1972. Ghiardi & Kircher, *The Uniform Motor Vehicle Accident Reparations Act: An Analysis and Critique,* 23 Federation of Insurance Counsel Quarterly 47 (1972); Ghiardi & Kircher, *The Uniform Motor Vehicle Accident Reparations Act,* 40 Insurance Counsel J 87 (1973).

standards for damages for wrongful death except that, as is the case for 'work loss' and 'replacement services loss,' allowable items are more rigorously limited to genuine economic loss. As under typical wrongful death statutes, the measure of damages is loss to the survivors which results from death. Thus, in calculating benefits, the decedent's probable life expectancy had he not been injured and the extent to which the survivors would have received contributions of things of economic value or the extent to which the decedent would have performed services for his survivors must be taken into account." 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, p 55.

Thus, it appears that the Legislature's use of the language "contributions of tangible things of economic value" in § 3108 indicates an intent that survivors' loss benefits should at least roughly correspond to *economic loss* damages recoverable under our wrongful death act. MCL 600.2922; MSA 27A.2922.

Under our wrongful death act, a survivor's recoverable economic losses include, at a minimum, the loss of financial support from the deceased and the loss of services that the survivor would have received from the deceased had he lived. See Wade, ed, The Michigan Law of Damages (Ann Arbor: ICLE, 1978), Part 2, pp 2-4—2-11. These elements of damages are clearly contemplated by § 3108 of the no-fault act.[9]

---

[9] We said in *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978):

"The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort."

The relationship of § 3108 survivors' loss benefits to economic loss

To the extent that survivors' loss benefits are intended to be analogous to wrongful death act economic loss damages, it is important to keep in mind that wrongful death act damages focus upon the financial loss actually incurred by the survivors as a result of their decedent's death. See 1 Speiser, Recovery for Wrongful Death (2d ed), § 3:5, pp 136-140. Certainly, the deceased's wage or salary income is almost always a significant factor in calculating the actual financial loss incurred by the survivors. However, the amount of the loss incurred is not limited to, much less based solely upon, the deceased's wage or salary income, but includes as well the myriad employment-related fringe benefits and other "tangible things of economic value" available for dependants' support described hereinbefore which are not always reflected in wage or salary "take home pay". See 1 Speiser, *supra,* §§ 3:8, 3:20, pp 147-150, 212-215.

Accordingly, it is our conclusion that the Legislature intended that the measurement of § 3108 survivors' loss benefits should include the value of tangible things other than, and in addition to, wages and salary. The dollar value of such items as employer-provided health insurance coverage, pensions, disability benefits, and other tangible things of economic value that are lost to the surviving dependents by reason of the insured's death must be taken into account. It is apparent then, that in many cases, the total amount of "contributions of tangible things of economic value" will exceed wage or salary income.

In the present case, however, the plaintiffs made no allegation and offered no evidence of any contributions to their support made by their decedent

elements of damage under the wrongful death act is consistent with the above described goal of the no-fault act.

other than his income from wages. We find there-
fore that, on the pleadings and evidence before us,
the lower court properly limited the calculation of
the aggregate of the deceased's contribution of
tangible things of economic value to his gross wage
income.

### III

It is next necessary to decide whether the aggre-
gate figure reached with respect to "contributions
of tangible things of economic value" should be
reduced by the amount of taxes that would have
been paid by the deceased, and further reduced by
an amount relating to the deceased's "personal
consumption factor".

### A

*Should the calculation of survivors' loss benefits
under § 3108 include consideration of the amount
of income-related taxes that the deceased would
have paid had he lived?*

On this question, the Court of Appeals held:

"The defendant contends that since the above statute
directs that 'a survivors' loss * * * consists of * * *
contributions * * * that dependents of the deceased
* * * *would have received for support'* (emphasis sup-
plied), it is properly read to require that the plaintiffs
be awarded only the amount of the decedent's gross
wage which would have been available to support the
plaintiffs prior to the decedent's death. While a literal
reading of the statute provides some support for the
defendant's construction of § 3108, a brief analysis of
1972 PA 294, of which § 3108 was a part, indicates the
fallacy in defendant's argument with respect to the
deduction of taxes. Section 3107(b) of the no-fault act,
also a part of 1972 PA 294, explicitly provides that 15
percent may be deducted from personal protection in-

surance benefits in certain situations where such bene-
fits 'are not taxable income'. Given the fact that both
sections were contained in the same piece of legislation,
it is reasonable to assume that had the Legislature
intended, in § 3108, to limit benefits to after-tax income,
it would have adopted language similar to that used in
§ 3107." 88 Mich App 180-181.

We find that the Court of Appeals reliance on
the language of § 3107(b)[10] of the no-fault act was
misplaced.

Section 3107(b) provides for the payment of
"work loss" benefits to an insured who suffers non-
fatal injury. The section defines "work loss" as
"consisting of loss of income from work an injured
person would have performed * * *".

Thus, work loss benefits are limited, by defini-
tion, to the loss of wage or salary income. Work
loss benefits are not taxable, while the lost income
they replace would be. The tax adjustment lan-
guage in § 3107(b) therefore presumably operates

[10] MCL 500.3107(b); MSA 24.13107(b) provides:

"Work loss consisting of loss of income from work an injured person
would have performed during the first 3 years after the date of the
accident if he had not been injured and expenses not exceeding $20.00
per day, reasonably incurred in obtaining ordinary and necessary
services in lieu of those that, if he had not been injured, an injured
person would have performed during the first 3 years after the date of
the accident, not for income but for the benefit of himself or of his
dependent. Work loss does not include any loss after the date on
which the injured person dies. *Because the benefits received from
personal protection insurance for loss of income are not taxable
income, the benefits payable for such loss of income shall be reduced
15% unless the claimant presents to the insurer in support of his
claim reasonable proof of a lower value of the income tax advantage
in his case, in which case the lower value shall apply.* The benefits
payable for work loss sustained in a single 30-day period and the
income earned by an injured person for work during the same period
together shall not exceed $1,000.00, which maximum shall apply pro
rata to any lesser period of work loss. The maximum shall be adjusted
annually to reflect changes in the cost of living under rules prescribed
by the commissioner but any change in the maximum shall apply
only to benefits arising out of accidents occurring subsequent to the
date of change in the maximum." (Emphasis added.)

equitably in all cases where taxable wage or salary income is replaced by § 3107(b) benefits. As has been discussed in Part II, survivors' loss benefits encompass the value of items apart from, and in addition to, wage and salary income. In many instances, items that will be included in survivors' loss benefits will have non-taxable origins. In some cases, the survivors' loss may involve *only* non-taxable items. Since survivors' loss benefits will, in many cases, include the value of items other than taxable wage or salary income, while work loss benefits are limited to wage or salary income, reliance on the language of § 3107(b) in the construction of § 3108 is inappropriate.

Of greater significance to the present issue is the language of § 3108 that "a survivors' loss * * * consists of a loss * * * of contributions of tangible things of economic value * * * that dependents of the deceased * * * *would have received* for support * * *." (Emphasis added.)

Tax liability associated with income is an inescapable fact of our modern economic life. In measuring the financial loss actually incurred by surviving dependents, it would be unrealistic to fail to acknowledge that surviving dependents would *not* have received for their support that portion of the deceased's income that he would have been required to pay in taxes. Moreover, the adjustment for such taxes can be accurately based on readily ascertainable information, without unnecessary administrative delays or time-consuming factual disputes.

We find that the language of § 3108 establishes that the Legislature intended that the amount of survivors' loss benefits should reflect an adjustment made for taxes that the deceased would have paid on taxable items included in the § 3108 benefit calculation.

We therefore hold that the lower courts erred in ruling that the calculation of survivors' loss benefits pursuant to § 3108 should not include consideration of taxes that the deceased would have paid had he lived.

## B

*Should the calculation of survivors' loss benefits under § 3108 include consideration of a "personal consumption factor" relating to purely personal expenses of the deceased that are avoided by reason of his death?*

Relying upon the provision of § 3108 that survivors' loss benefits are payable to a dependent for the loss of such "tangible things" as the dependent "would have received for support" but for the decedent's death, the defendant makes a forceful argument that such fund does not include either the taxes discussed in the previous section or such sums as would have been consumed by the decedent himself for food, recreation, clothing and personal expenses. The bare language of the statute does indeed suggest that meaning. Certainly, if it was the intent of the Legislature, in employing the language chosen, to require that the dollar amount of survivors' loss benefits be computed by deducting from the "tangible things of economic value" a "consumption factor" attributable to the deceased's personal expenses, we must require application of such a formula. However, there are at least two persuasive indications that despite the apparently plain and simple language of the statute to the effect suggested by defendant, the Legislature did not intend such a "consumption factor" to be deducted in calculating survivors' loss benefits.

The first is the legislative history of the adoption of § 3108, and the second is the declared purpose of the no-fault act as a whole.

We are aided in discovering legislative intent in enacting any statute by examining the proposed legislation it considered and rejected, contrasted with the provisions as finally adopted. That approach is particularly useful in this instance since there is no record of committee hearings or floor debate available to us.

As has been indicated, § 3108 was enacted after consideration of at least two alternatives.

One alternative was Senate Bill No. 782, which provided in pertinent part:

"Sec. 8. Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that persons who are dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death and expenses reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death."

The other alternative, contained in the House Substitute for Senate Bill No. 782, provided in pertinent part (§§ 3106[2] and 3106[3]):

" 'Survivor's economic loss' means after decedent's death loss of contributions of things of economic value, not including services to his survivors, that his survivors would have received from the decedent had he not

suffered the injury causing death, *less expenses of the survivors avoided by reason of decedent's death.* "

" 'Survivor's replacement services loss' means expenses reasonably incurred by survivors after decedent's death in obtaining ordinary and necessary services in lieu of those that decedent would have performed for their benefit had he not suffered the injury causing death, *less expenses of the survivors avoided by reason of the decedent's death* and which were not subtracted in calculating survivor's economic loss." (Emphasis added.) 5 Mich House J (1972) 1418-1419.

The myriad activities that attend the legislative process having run their course, 1972 PA 294 was enacted containing language consistent with that of Senate Bill No. 782 and *without* the clause "less expenses of the survivors avoided by reason of the decedent's death" which appeared in the House substitute bill.

It is logical to conclude that the Legislature eliminated the italicized clause for a reason, and most likely the reason was that it wished to preclude reduction of the amount of survivors' loss benefits by the decedent's "consumption factor". We are asked, however, to hold, as did the Court of Appeals, that the Legislature meant in § 3108 not only what it did not say explicitly, but what it explicitly rejected. We are not inclined to do so. See *Wayne County v Auditor General,* 250 Mich 227, 235-236; 229 NW 911 (1930); *People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954). See also 2A Sutherland's Statutory Construction (4th ed), § 48.18, pp 224-225.

The second reason we think the Legislature did not intend that a "consumption factor" for the decedent's personal expenses be calculated and deducted from the fund of "things of tangible value" that the decedent's dependents would otherwise have received is found in our understand-

ing of the purpose of the no-fault act itself and the manner in which it is intended to be applied.

In *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978), we said:

"The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses".

The act is designed to minimize administrative delays and factual disputes that would interfere with achievement of the goal of expeditious compensation of damages suffered in motor vehicle accidents. These ends are served, for example, by the act's provisions for conclusive presumptions of dependency status, MCL 500.3110; MSA 24.13110; for a "safe" method of payment of benefits by insurers, MCL 500.3112; MSA 24.13112; and for prompt access to earnings records of an injured person in order to facilitate determination of the amount of benefits due, MCL 500.3158; MSA 24.13158. Additionally, while § 3108 does not provide for a deduction for personal expenses of the decedent avoided by reason of his death, it does contain an absolute ceiling on the amount of survivors' loss benefits for any 30-day period. Thus, § 3108 itself, and the act as a whole, presumably reflect a balance struck by the Legislature between absolute factual precision in the calculation of benefits and the goal of "assured, adequate, and prompt reparation for certain economic losses".

Calculation, in every case, of a "consumption factor" attributable to the decedent's personal expenses would be inconsistent with the declared legislative purposes of expeditious settlement of survivors' claims without complex factual controversy:

A family is not run like a commercial enterprise. Family finances are not allocated or their expenditure accounted for as in a business. Accounting procedures are rarely, if ever, followed to account for the precise dollars-and-cents expenses in cash and in kind attributable to each member of the family. How, for example, would the deceased breadwinner's "consumption factor" for family meals, use of the family automobile, household maintenance, and hundreds of personal expenses be calculated? And if calculable at all, one can envision the interminable controversy and disproportionate expense such a factual determination would involve. As the plaintiff so aptly put it:

"A legislative purpose of rapid, efficient and uniform claims adjustment is not advanced by a ponderous examination of every family expenditure." Plaintiff's Brief, p 18.

In view of the no-fault act's goal of expeditious reparation of motor vehicle accident injuries, and minimization of potential factual disputes, we conclude that the Legislature's explicit rejection of the language in the House substitute bill concerning the reduction of survivors' loss benefits by the decedent's "personal consumption factor" evidences an intent that survivors' loss benefits not be so adjusted. The amount of such a personal consumption factor is likely to be small in most cases, and the administrative delays and factual controversies that might be engendered by such a calculation would unjustifiably interfere with the above-discussed goals of the act.

We hold that the legislative history of § 3108, and consideration of the goals of the no-fault act as a whole, lead to the conclusion that the Legislature did not intend that the calculation of § 3108

benefits should include adjustment for the deceased's "personal consumption factor".

We reverse the Court of Appeals ruling and reinstate the judgment of the trial court on this point.

## C

In summary, we conclude that the Legislature intended that § 3108 survivors' loss benefits should be calculated:

(1) to include all demonstrable "contributions of tangible things of economic value" including, but not limited to, wages that would have been received as support by the surviving dependents from the deceased but for his death;

(2) reduced by an adjustment for the income-related taxes that would have been paid by the decedent on items contributed by him to his dependents' support;

(3) without adjustment for the decedent's "personal consumption factor".

## IV

*Does the remarriage of an insured decedent's spouse reduce the amount of survivors' benefits due other dependents under § 3108?*

As has been indicated previously, survivors' loss benefits are payable "for a survivors' loss * * * of contributions of tangible things of economic value * * * that *dependents of the deceased at the time of his death* would have received for support *during their dependency * * *".* (Emphasis added.) Such benefits are payable for three years after the date of the accident. MCL 500.3108; MSA 24.13108.

The emphasized language in § 3108 and that of

§ 3110(1)(a), which is set forth in the margin,[11] establishes that dependency status for purposes of survivors' loss benefits is to be determined by reference to the survivors' dependency relationship to the deceased at the time of the deceased's death.

Section 3110(3) establishes that the act contemplates the termination of dependency status upon the occurrence of specified events.[12]

Section 3110(4) declares that survivors' loss benefits accrue not when the injury occurs, but as the survivors' loss is incurred.[13]

When a survivor's status as a dependent terminates pursuant to § 3110(3), that survivor's individual loss is no longer incurred. Accordingly, upon the occurrence of an event specified in § 3110(3) terminating a survivor's dependency status, it is necessary to consider an adjustment to the amount of survivors' loss benefits payable thereafter to the

---

[11] MCL 500.3110; MSA 24.13110 provides:

"(1) The following persons are conclusively presumed to be dependents of a deceased person:

"(a) *A wife is dependent on a husband with whom she lives at the time of his death.*

"(b) A husband is dependent on a wife with whom he lives at the time of her death.

"(c) A child while under the age of 18 years, or over that age but physically or mentally incapacitated from earning, is dependent on the parent with whom he lives or from whom he receives support regularly at the time of the death of the parent.

"(2) In all other cases, questions of dependency and the extent of dependency shall be determined in accordance with the facts as they exist at the time of death.

"(3) *The dependency of a surviving spouse terminates upon death or remarriage.* The dependency of any other person terminates upon the death of the person and continues only so long as the person is under the age of 18 years, physically or mentally incapacitated from earning, or engaged full time in a formal program of academic or vocational education or training.

"(4) Personal protection insurance benefits payable for accidental bodily injury *accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred."* (Emphasis added.)

[12] See fn 11.

[13] See fn 11.

remaining surviving dependents. This conclusion is buttressed by reference to § 3112 which expressly considers individual apportionment of, and entitlement to, survivors' loss benefits, and which provides a mechanism for the resolution of disputes concerning the amount of survivors' loss benefits due to individual surviving dependents.[14]

We find that the above-discussed provisions of the no-fault act manifest a legislative intent that survivors' loss benefits should be appropriately adjusted in the event of the disqualification of a survivor from dependency status. The relevant provisions indicate that the proper method of adjusting survivors' loss benefits to reflect the termination of a survivor's dependency status is to recalculate the amount of contributions of tangible things of economic value that the remaining dependents would have received for support from the deceased at the time of his death. That is, the aggregate of survivors' loss benefits being paid for the benefit of all of the decedent's survivors prior

---

[14] MCL 500.3112; MSA 24.13112 provides:

"Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. *If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto,* the insurer, the claimant or *any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate.* In the absence of a court order directing otherwise the insurer may pay:

"(a) To the dependents of the injured person, the personal protection insurance benefits accrued before his death without appointment of an administrator or executor.

"(b) *To the surviving spouse, the personal protection insurance benefits due any dependent children living with the spouse.*" (Emphasis added.)

to the disqualification of one of them should be reduced only by the amount equal to the contributions of tangible things of economic value that the deceased would have made solely for the benefit of the disqualified dependent. Contributions which benefit the family unit as a whole, as opposed to the disqualified dependent only, would not be affected. For example, the contributions that the deceased would have made toward the family's shelter in the way of house payments or rent, property taxes, household utility costs, the family car and similar expenses which do not inure to the sole benefit of the disqualified dependent should not be adjusted. Further, the adjustment should be made with reference to the aggregate of contributions of tangible things of economic value at the time of the deceased's death—before application of the § 3108 ceilings. Thus, in a case where the initial determination of survivors' loss was an amount in excess of the § 3108 ceilings, and the amount of benefits payable was therefore reduced to the statutory maximum, it will be necessary to determine whether the later disqualification of one of the dependents would result in a reduction of total original survivors' loss to an amount below the applicable statutory maximum. If not, the insurer would continue to be liable for the statutory maximum after the termination of a survivor's dependency status.

For the foregoing reasons, we reverse the trial court's ruling concerning the effect of Linda Miller's remarriage on the amount of survivors' loss benefits due to the remaining dependent survivors.

## V

In conclusion, to the extent that the lower courts' decisions are contrary to the foregoing

analysis, they are reversed. This case is remanded to the circuit court for further proceedings consistent with this opinion.

FITZGERALD and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

WILLIAMS, J. I concur except as to IV.

LEVIN, J. *(concurring in part, dissenting in part).* I concur with Part IIIA of the opinion of the Court, requiring an adjustment for taxes in calculating survivors' loss benefits under § 3108, and with Part IV, requiring a recomputation of survivors' benefits upon remarriage of a surviving spouse. I dissent, however, from the conclusion in Part IIIB that no adjustment for the personal expenditures of the decedent need be made. Also, I would not reach the question of what, other than contributions of wages, constitutes "contributions of tangible things of economic value" to survivors under § 3108. The plaintiffs have not alleged or offered evidence of contributions from sources other than wages, and therefore the question is not before us.

The no-fault motor vehicle liability act provides for reimbursement of income lost by the injured person or his family as a result of injury. If the injured person survives the accident, the act provides for reimbursement of his own income loss, measured by the amount of wages he loses while he is disabled ("work loss"). If he does not survive the accident, the act provides for reimbursement of the income lost by his family, measured by the amount they would have received from him for their support.

The Legislature thus used two different measures for two different situations, work loss consist-

ing of income from work the injured person is unable to perform because of his injury where he survives his injury, and lost contributions to the family's support where he dies. The primary difference between the two is that wages committed exclusively to the personal expenditures of the injured person are part of work loss but are not part of the amount that would have been contributed for the support of the family. What the injured person would have spent on himself could not have been contributed to his family's support.

The opinion of the Court concludes that these personal expenditures need not be subtracted from total wages in calculating the amount that the injured person who dies would have contributed to his family's support. Since this subtraction is typically, and in this case, the only difference between the two measures, the Court effectively erases the distinction drawn by the statute and makes lost wages the measure of income loss in both situations.

I dissent because I can see no basis for construing out of the statute a distinction that is clearly there. Had the Legislature intended that lost wages be the measure in both situations, it would not have used two different measures for the two different situations. The rationales advanced by the Court for construing this distinction out of the statute are not persuasive. An analysis of the purposes and antecedents of the survivors' loss provision indicates that the Legislature intended that the different language result in a different measure.

The first rationale advanced by the Court is based on the legislative history of the act, namely the adoption of the Senate version of the act rather than the substitute offered by the House.

Both bills defined survivors' loss as the loss of "contributions" that the deceased would have made to his family, with the House substitute adding the clause "less expenses of the survivors avoided by reason of decedent's death". The Court concludes that in adopting the version without a subtraction for expenses of the survivors avoided by the death, the Legislature indicated that no subtraction should be made for the personal expenditures of the deceased in computing survivors' loss.

The Court acknowledges that we have no evidence of the legislative give and take that led to adoption of the Senate bill rather than that of the House, or of whether this particular difference between the two bills was a factor in that choice, or, if this difference was a factor, what the Legislature intended to accomplish by not including the clause. With so much in doubt, I question whether the mere choice of one bill over another is an adequate basis for negating a distinction clearly present in the language of the act.

Moreover, the language of the "deleted" clause must be strained to make it mean what the Court asserts. Only by straining can the personal expenditures of the *deceased* be considered "expenses of the *survivors* avoided by reason of decedent's death".

The correct meaning of the clause, one which indicates that it was not intended to refer to the deceased's personal expenditures, is revealed in the comments to the model act from which the clause was drawn. The example there given is that the clause would require the subtraction from a deceased child's financial contributions to the family of the family's expenses in rearing the child.

The Court recognizes that the measure of survi-

vors' loss under the no-fault act was patterned after the measure of survivors' loss under wrongful death acts. Under wrongful death acts compensating survivors' loss, however, the measure of recovery is not total earnings. A reduction must be made for the personal expenditures of the deceased.

Further, the comments to both model acts on which the no-fault act was based state that recovery was intended to be more rigorously confined to actual pecuniary loss than under most wrongful death acts. Failing to subtract the amount of wages the deceased would have spent exclusively on himself, rather than contributed to his family for their support, defeats this intent by allowing recovery of an amount not actually lost.

The second rationale offered by the Court is that the difficulty and disproportionate expense of calculating the reduction for the decedent's personal expenditures is inconsistent with the legislative purpose of expeditious settlement of claims without complex, time-consuming factual controversies. The use of such a purpose to negate a distinction clearly drawn in the statute establishes a troublesome precedent. Is this Court to review all factual determinations arguably called for under the act on the basis of their cost effectiveness? That is clearly not the Court's role.

Moreover, I have difficulty understanding how the Court can reject this calculation as inconsistent with the act's purpose, when the Court concludes that the act requires a virtually identical calculation when a surviving spouse loses her dependency status upon remarriage. In the latter situation, the Court concludes that the act requires a reduction of survivors' loss payments by the amount of contributions that the deceased "would

have made solely for the benefit of the disqualified dependent". This calculation is analogous to the calculation of the amount that would have been spent solely for the benefit of the deceased, and surely will be no less difficult or time-consuming.

We all agree that the act requires such a calculation as to the disqualified dependent. Such a calculation as to the deceased cannot, consistent with that conclusion, be rejected as contrary to the purposes of the act.

I

A detailed analysis of the Court's legislative history argument illustrates its weaknesses. The language of the Senate bill was substantially the same as the language enacted: "contributions * * * that * * * dependents of the deceased * * * would have received for support".[1] The House substitute bill provided, in part: "contributions * * * that his survivors would have received from the decedent * * *, less expenses of the survivors avoided by reason of decedent's death".[2] The Court imputes significance to the adoption of the Senate bill rather than the House substitute, which had the effect of failing to enact the clause "less expenses of the survivors avoided by reason of decedent's death".

A court is on insecure ground when it attempts to derive legislative intent from the enactment, without explanation, of one bill rather than another.[3] A court is on somewhat firmer, although

[1] The pertinent section of the Senate bill is quoted in full in fn 5 of the Court's opinion.

[2] The pertinent section of the House substitute is quoted in full in fn 6 of the Court's opinion.

[3] *Jefferson v United States,* 178 F2d 518, 520 (CA 4, 1949), *aff'd sub nom Feres v United States,* 340 US 135; 71 S Ct 153; 95 L Ed 152 (1950).

not solid, ground when it reasons from the express defeat of a bill or amendment.[4] Here, however, we do not have an express rejection of the alternative by vote. Nor do we have any evidence that the attention of the Legislature was focused upon this particular difference between the two bills, much less evidence of why the Legislature deleted the clause if indeed the deletion was intentional.

The Court recognizes the lack of explicative floor debate and committee reports, and states:

"The myriad activities that attend the legislative process having run their course, 1972 PA 294 was enacted containing language consistent with that of Senate Bill No. 782 and *without* the clause * * * which appeared in the House substitute bill."

As the United States Supreme Court has observed, "[t]he interpretation of statutes cannot safely be made to rest upon mute intermediate legislative maneuvers".[5]

Assuming that some legislative intent can be gleaned from the choice of the Senate bill rather than the House substitute, the construction adopted by the Court is not persuasive. First, it requires a strained construction of the clause the Court concludes was purposely deleted. That clause would have required a reduction for "expenses of the survivors avoided by reason of the decedent's death". To conclude that, by deleting this clause, the Legislature intended to preclude a reduction for the wages spent on decedent's personal expenses requires concluding that the Legislature considered the decedent's personal expenses

---

[4] *Liquor Control Comm v Fraternal Order of Eagles, Aerie No 629,* 286 Mich 32, 43-44; 281 NW 427 (1938).

[5] *Trailmobile Co v Whirls,* 331 US 40, 61; 67 S Ct 982; 91 L Ed 1328 (1947).

to be "expenses of the survivors". This is an unwarranted construction, particularly in light of the more reasonable construction, expressly confirmed by the commentary to the model act from which the clause was apparently drawn,[6] that "expenses of the survivors" was intended to refer to such things as a parent's cost in raising a child, which is generally subtracted from the parent's recovery for lost contributions upon the wrongful death of his or her child.

Second, both bills defined survivors' loss as the loss of "contributions" that the decedent would have made to his dependents. It is this part of the definition that is critical to the question of whether a subtraction for the decedent's personal expenditures is required. When consideration of the "less expenses" clause drops out as being irrelevant to this question, the two bills must be seen as virtually identical in their critical language.

Where the decedent had lived apart from his dependents and had made contributions to their support in the form, for example, of monthly checks, the amount of his earnings devoted to his own expenses could not have been a part of his

[6] The official comments to UMVARA §§ 1(a)(5)(iv) and 1(a)(5)(v), which define "survivor's economic loss" and "survivor's replacement services loss" and which use the clause "less expenses of the survivors avoided by reason of decedent's death", state:

"It is also necessary to subtract expenses which the survivors avoided by reason of the decedent's death, although the same avoided expenses cannot be subtracted twice from both survivor's economic loss and survivor's replacement services loss. For example, in the case of death of a child who had regularly contributed small personal earnings to his family and performed services in the home, there might be no survivor's economic loss or survivor's replacement services loss after the expenses avoided by reason of his death were subtracted from the value of the earnings and the cost of replacement services he would have contributed to the family." 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, p 55.

contributions. The application of the statutory language in such a situation is clear—the survivors are entitled only to what would actually have been contributed. The Court concludes, however, that when the decedent had been sharing a household with his dependents, the statutory language is to have a different meaning. In such a case, the survivors are entitled not only to what would have been contributed, but also to what would have been devoted to the decedent's own personal expenses. The statute does not provide for such differential treatment according to whether the decedent had been· living with his dependents.

Third, construing the act to compensate survivors for contributions they would not actually have received is inconsistent with the intent of the act, as evidenced by its antecedents, to rigorously confine the measure of loss to actual pecuniary loss.

The drafters of the Motor Vehicle Basic Protection Insurance Act (MVBPIA)[7] and the Uniform Motor Vehicle Accident Reparations Act (UMVARA),[8] the two model acts relied upon by the Legislature in drafting the Michigan act, had similar goals in defining "survivors' loss". The authors' comments on § 1.9(e) of the MVBPIA state:

" '[S]urvivors' loss' is defined in a way somewhat similar to standards for damages under death acts, but *with a more rigorous adherence to genuine economic loss* than under most death acts." (Emphasis supplied.)[9]

The Commissioners' Comments to §§ 1(a)(5)(iv) and 1(a)(5)(v) of the UMVARA state:

---

[7] See fn 7 of the Court's opinion.

[8] See fn 8 of the Court's opinion.

[9] Keeton & O'Connell, Basic Protection for the Traffic Victim: A Blueprint for Reforming Automobile Insurance (Little, Brown & Co, 1965), p 400.

" 'Survivor's economic loss' and 'survivor's replacement services loss' are defined in a way analogous to standards for damages for wrongful death except that, as is the case for 'work loss' and 'replacement services loss,' *allowable items are more rigorously limited to genuine economic loss."* (Emphasis supplied.)[10]

Fourth, although the Court acknowledges that the Legislature's reliance on the model acts, as explained by the authors' comments quoted above, indicates "an intent that survivors' loss benefits should at least roughly correspond to economic loss damages recoverable under our wrongful death act", the Court's construction is clearly at odds with the measure of survivor's loss under the wrongful death act.

To clarify this point, it is useful to contrast the historical differences between recovery under the survival act and recovery under the wrongful death act.[11] Under the survival act, the plaintiff claimed as the representative of the deceased. Since the plaintiff was entitled to recover what *the deceased* would have received had death not occurred, no reduction for the personal consumption of the deceased was required.[12]

Under the wrongful death act, the focus shifted to the loss suffered by *the survivors* by reason of the decedent's death. This focus on the survivors' loss is replicated in § 3108. When determining the survivors' loss, it has long been the law in Michigan, and elsewhere, that the personal expenditures of the decedent must be subtracted. As was explained in *Sipes v Michigan C R Co*:[13]

---

[10] See fn 6, *supra.*

[11] The two actions were combined in 1937, so that both must now be brought under the current wrongful death act. MCL 600.2922; MSA 27A.2922.

[12] *Olivier v Houghton County Street-Railway Co,* 138 Mich 242; 101 NW 530 (1904).

[13] *Sipes v Michigan C R Co,* 231 Mich 404, 407-408; 204 NW 84

"This is not a suit to recover the loss to decedent's estate of his prospective earnings, but only to recover the pecuniary loss sustained by his widow and child. Such loss, in no event, could approximate his earnings, for the expense of his own needs would have to be met along with the needs of his family."

The plain language of the act indicates that a survivor cannot recover what would have been spent on the decedent's personal expenditures, since such amount could not be contributed to dependents for their support. I would not depart from the most plausible reading of the language in favor of an alternative reading based on "mute intermediate legislative maneuvers", especially where an analysis of the model act antecedents of § 3108 indicates that the clause at issue had nothing to do with a reduction for the personal expenditures of the decedent.

The Court's reading of the legislative history requires concluding that the Legislature intended to define survivor's loss in a manner inconsistent with the standard of damages under wrongful death actions, in spite of the Court's recognition that the act was patterned after such standards. The most plausible reading of the statutory language, as requiring a reduction for the decedent's personal expenditures, is consistent with those standards and with the goal, expressed in the commentary to both model acts, to more rigorously confine recovery to genuine economic loss.

---

(1925), partially overruled on another issue, *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965). See also 25A CJS, Death, § 101, pp 920-921:

"The amount recoverable is not the loss of the entire earnings, but rather the loss of that portion of the earnings which the beneficiary would have received. Moreover, only net earnings, not gross earnings, are to be considered, that is, the total of the earnings less expenses necessary in the creation of such earnings or income, and *less living and other incidental expenses."* (Emphasis supplied.)

II

The second reason offered by the Court for its conclusion that the Legislature did not intend a reduction for the decedent's personal expenditures is the general goal of the no-fault act to provide for the expeditious settlement of claims without complex factual controversies.

I am in full sympathy with the Court's recognition of the difficulties inherent in such calculation, and of the disproportionate cost of the calculation in light of the small amounts that will normally be subtracted. Since I do not consider the use of statistical evidence of average personal consumption of family members to be consistent with the act's requirement that the genuine economic loss of individual survivors be determined, I must recognize that the construction of § 3108 which I think correct will often necessitate a time-consuming and difficult factual inquiry.

Expeditious reparation is indeed one of the general purposes of the act. Such general purposes, however, much less our assessment of the wisdom or cost-effectiveness of the Legislature's choice, cannot justify our reading out of the act a factual determination required by it.

Further, while the Court cites as examples several provisions designed to expedite resolution of claims, it also recognizes that a factual determination of precisely the same character as is involved in determining the amount of income allocable to the decedent's personal expenditures is required by the act when a spouse loses his or her dependency status upon remarriage:

"[T]he aggregate of survivors' loss benefits being paid for the benefit of all the decedent's survivors prior to the disqualification of one of them should be reduced

only by the amount equal to the contributions of tangible things of economic value that the deceased would have made solely for the benefit of the disqualified dependent."

The factual determination required by such a reduction is equivalent to that required in calculating the personal expenditures of the deceased, with the personal expenditures of the disqualified dependent substituted for those of the deceased. One cannot, therefore, properly conclude that such a factual determination is necessarily inconsistent with the act's general purpose of expediting the settlement of claims.

I am persuaded that the Legislature intended that income that would have been committed to the personal expenditures of the decedent should not be considered as an economic loss of the survivors. Indeed, the Court does not argue that the loss of wages that would have been spent on the decedent is actually an economic loss of the survivors. Obviously, the survivors cannot be considered to have lost what they never would have received. To construe § 3108 otherwise defeats the general goal of reducing the cost of no-fault insurance through rigorously confining damages to genuine economic loss.

Where the injured person survives the automobile accident, the Legislature expressly provided for full recovery of lost wages.[14] Where the injured person dies, the Legislature did not use lost wages as the measure of damages but, rather, shifted to the survivors' loss of contributions to their support. The Court in effect rewrites the statute in those cases where the decedent had lived with the dependents to shift the measure back to lost

[14] MCL 500.3107(b); MSA 24.13107(b).

wages. This is simply not what the Legislature has provided.

I would hold that survivors' loss under § 3108 does not include income spent on personal expenditures of the decedent and remand to the trial court for further proceedings consistent with this opinion.

COLEMAN, C.J., and KAVANAGH, J., concurred with LEVIN, J.